### JOHN B. SWEETLAND *vs.* LYNN AND BOSTON RAILROAD COMPANY.

Essex.     November 26, 1900. — February 26, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

Where it appeared that the rules of a street railway company required its cars to go over a certain frog at a rate not exceeding four miles an hour, evidence that one of its cars about to pass over this frog was running at the rate of twelve or fifteen miles an hour was held to be evidence of negligence on the part of the company.

Ordinarily it is a question of fact for a jury whether a passenger riding on the front platform of a street railway car is in the exercise of due care.

A sign on the hood of a street railway car, forbidding persons to ride on the front platform, does not affect the liability of the railway company to one riding on such front platform, who has acted in the belief justified by the company's conduct that the rule thus indicated was not in force.

TORT to recover for injuries received by reason of the improper management and control of a car of the defendant in entering upon a switch thereby causing a jolt of the car and causing the plaintiff, who was standing on the front platform of the car, to be thrown to the ground and injured. Writ dated November 18, 1898.

At the trial in the Superior Court, before *Stevens*, J., the plaintiff testified that on the 7th day of October, 1898, he boarded a car of the defendant company at Central Square in Lynn at about half past six o'clock in the evening, and took a position upon the front platform of the car on the right hand

side of the door as the car was going; that he was as close to the door as he could get, and was holding on to the rail that 'is in front of the body of the car which was a closed car; that when he got on to the car all the seats were taken, and people were standing in the aisle; that on the front platform there were four others besides himself at the time he boarded the car; that there were people standing on the rear platform at the same time; that while so riding he was smoking and held on to the rail with his left hand; that he had ridden upon the front platform from the time the car started from Central Square to the point of the accident; that the car was going up Union Street to Chestnut Street, and that when it got to the junction of Chestnut and Boston Streets, the motorman turned off his power so as to run over the switch, and turned his brake the other way, and when he turned it the other way he struck into the switch as if the car struck a solid ledge of rocks; that the effect of this was to throw him off to the right, and that at the time he was thrown off he was holding on to the car with his left hand.

On cross-examination the plaintiff testified that he was accustomed to ride upon this line; that when he took this car he saw it was crowded; that he made no attempt to get upon the car anywhere but at the front; that the rear platform was not crowded; that there was room for more there; that there were not so many upon it but what more could get on; that there was a chance to get inside the car if he wanted to get in and stand, and that he was smoking and stood on the front to smoke; that the passengers that were standing on the front platform with him at the time he started on his journey had got off; that he had been riding alone upon the platform not more than five minutes; that he had a small bundle with him about four inches wide and fifteen inches long, but it was standing behind him; that he did not see the sign on the bonnet of the car notifying passengers not to stand on the front platform; that he had seen it since the accident, but never had seen it before.

The following question was asked the witness: "Had you seen that sign would you have remained upon the front platform?" This question upon objection of the plaintiff was excluded, and the defendant excepted.

Upon re-direct examination the plaintiff testified, that the rate of speed at the time the car came up to the frog he should think was from twelve to fifteen miles an hour, and that the car was going at this rate when it struck the frog; that the conductor or motorman did not speak to him as to where he was standing or riding ; that after he boarded the car passengers got off the front platform ; that he did not think any got in from the time he left Central Square ; that the conductor collected fares from them and from the plaintiff as he stood upon the front platform.

A witness for the plaintiff testified, that when the car started to go down the hill before it reached the place of the accident the car had to take a switch ; that it started a little, then started at the rate of perhaps eight miles an hour, and when it got within a few feet of the switch the car started ahead at a sudden jump at a rate he should say of fifteen miles an hour, and when it struck the switch it gave a sudden jump as if it ran up against something solid, it started so around the curve and the switch about forty feet; that when the car started ahead he was looking in the direction of the plaintiff, and when the car ran up against what it struck, the plaintiff was thrown off the car on the right hand side, and the car kept going; that the distance from Central Square to the point of the accident is about two miles.

The defendant introduced evidence, that at each end of the car overhead inside the hood or bonnet was a sign reading as follows : " Notice. All persons are forbidden to be on the front platform of this car, and this Company will not be responsible for their safety. Per order of the Directors."

It appeared that the hood or bonnet of the car projects over the motorman's head out over the entire platform ; that these signs were placed on the bonnet in the centre, so as to face a person standing upon the platform with his back toward the body of the car ; that the sign was opposite the glass door of the car ; that the car was lighted by electricity and the sign could be seen by the light.

Against the objection and exception of the defendant, a witness for the defendant was asked, on cross-examination, the following questions, and gave the following answers: " *Q.* I want to know if it is not the habitual custom for persons smoking to

ride on the front platform? *A.* It is the custom for people to smoke on the front platform.— *Q.* Now I ask you if it is not the habitual custom for passengers having bundles to ride on the front platform? *A.* It is the custom for bundles to be placed on the front platform."

It was admitted, that a rule of the railway company required its cars to go over the frog where the accident occurred at a rate not exceeding four miles an hour, and the motorman testified that at the time of the accident he was not going at a greater rate than this.

The plaintiff called as a witness in rebuttal a police officer, who testified that he had been a conductor of the defendant's cars before the accident for a year and three months, and had ceased to be in their employ two or three months before the accident; and that he now lived within forty feet of this switch.

Against the objection and exception of the defendant, this witness was asked and permitted to answer the following question : " *Q.* I want to know what was the custom up to the time of this accident as to riding on the front platform, — the habitual custom? *A.* They always rode on the front platform when they saw fit."

The plaintiff also called in rebuttal another witness, who, against the objection and exception of the defendant, was permitted to testify as follows : " *Q.* I want to ask you what was the custom on that line and elsewhere in Lynn with reference to riding on the front platform? *Stevens*, J.  The habitual custom. *A.* The custom was that anybody getting on the car on the rear end, smoking, was requested by the conductor — *Q.* You may give the custom regardless of the talk.  What was the habitual custom about it? *A.* To go to the front end to smoke. — *Q.* I will ask you if that was an habitual custom on the Lynn & Boston road? *A.* Yes, sir."

The plaintiff also called another witness, who testified that he had ridden on the cars of the defendant for some six years; that he travelled on the line on which the plaintiff was injured and on the Peabody line, and against the objection and exception of the defendant was permitted to answer the following questions : " *Q.* I want to know if you know whether there was an habitual custom there as to the use of the front platform ?

*A.* Yes, sir. — *Q.* What was it ? *A.* Smokers. — *Q.* Anybody else ? *A.* Anybody that chose to ride there."

At the close of the evidence the defendant asked the judge to rule that upon all the evidence in the case the plaintiff could not recover. This ruling the judge declined to give. At the request of the defendant, the judge gave the following instruction to the jury : " The defendant had the right to make reasonable rules and regulations regulating the manner and place passengers should ride upon its cars, and a rule forbidding passengers to ride upon the front platforms of its cars is a reasonable rule and regulation."

The defendant asked the judge to give the following instruction : " If the plaintiff knew that there was a rule forbidding passengers riding upon the front platform, and if at any time after boarding the car there was room inside the car where he could have stood or sat, and the plaintiff knew there was room inside the car, and the plaintiff refused or neglected to avail himself of the opportunity to go inside, but continued to ride upon the front platform in violation of such rule, he cannot recover."

The judge gave this instruction with the following qualification : " unless he was justified in assuming from the manner in which the railroad was operated that the enforcement of the rule had been waived." To this qualification the defendant excepted.

The defendant asked also for the following ruling : " If the jury find that at the time and before the accident there was posted upon this car in a prominent place a notice that ' passengers are forbidden to ride upon the front platform,' which notice the plaintiff saw, or by the exercise of reasonable care he might have seen, but still persisted in riding upon the platform, he did so at his own risk and cannot recover." This ruling the judge declined to give.

The jury found a verdict for the plaintiff ; and the defendant alleged exceptions.

*H. F. Hurlburt & D. E. Hall,* for the defendant.

*J. F. Hannan & W. H. Niles,* for the plaintiff.

KNOWLTON, J. There was evidence of negligence on the part of the defendant's motorman in running the car. The car was about to pass over a frog at a curve where the defendant's rules

required that cars should not be run faster than four miles an hour, and there was testimony that the car was started up suddenly just before it reached the frog, and was going at the rate of twelve or fifteen miles an hour when it struck the frog and threw the plaintiff off.

There was also evidence from which the jury might find that the plaintiff was in the exercise of due care, notwithstanding that he was riding on the front platform of the car, unless he was acting in violation of one of the defendant's rules in being there. Ordinarily it is a question of fact for a jury whether a passenger, riding on the front platform of an electric car or a horse car, is in the exercise of due care. *Lapointe* v. *Middlesex Railroad*, 144 Mass. 18, 21. *Cummings* v. *Worcester, Leicester, & Spencer Street Railway*, 166 Mass. 220. *Wilde* v. *Lynn & Boston Railroad*, 163 Mass. 533. *Beal* v. *Lowell & Dracut Street Railway*, 157 Mass. 444.

The remaining question in the case relates to the effect of a sign attached to the hood of the car before and at the time of the accident, which read as follows: " Notice. All persons are forbidden to be on the front platform of this car, and this Company will not be responsible for their safety. Per order of the Directors." This purports to be a prohibition of passengers from riding on the front platform, and not a notice stating the terms on which they may ride there. The judge rightly instructed the jury that such a rule would be reasonable, *O'Neill* v. *Lynn & Boston Railroad*, 155 Mass. 371, and that if the plaintiff was intentionally violating the rule, he could not recover. *Dodge* v. *Boston & Bangor Steamship Co.* 148 Mass. 207. *Wills* v. *Lynn & Boston Railroad*, 129 Mass. 351. But the jury were permitted to find that, notwithstanding the sign, the rule, if it ever was intended to be a rule, had been allowed by the defendant to become a dead letter, so that in effect the case was as if there never had been such a rule. We have no doubt that a railroad company, after making a rule in regard to the conduct of passengers, may waive and abandon it, and treat passengers as if it had never existed, and thus lead them to believe that the rule is no longer in force. If a railroad company does this, it cannot set up the rule to defeat the rightful claim of a passenger who has acted in the well warranted belief that the rule is not in

force. *Chicago, Milwaukee & St. Paul Railway* v. *Lowell*, 151 U. S. 209. *Dublin, Wicklow, & Wexford Railway* v. *Slattery,* 3 App. Cas. 1155. *Jones* v. *Chicago, St. Paul, Minneapolis & Omaha Railway,* 43 Minn. 279. *New York, Lake Erie & Western Railroad* v. *Ball,* 24 Vroom, 283, 286. If such signs as this are placed over the front platform of cars, and if afterwards the persons in charge of the cars are accustomed to receive passengers upon the cars in such numbers as to crowd the front and rear platforms, as well as the other parts of the cars, and the passengers are permitted to ride freely and without question upon the front platforms, paying for so riding the usual fare, the passengers may well believe, and the jury may well find, that the notice was not intended as a rule to be obeyed, and that the front platforms were intended by the company to be used by passengers. The officers of the company might be supposed to know the habitual methods of their servants in managing their cars. We are of opinion that the instructions were correct, and that the evidence well warranted the submission of the questions to the jury.

*Exceptions overruled.*