JOHN H. BOYLE, administrator, *vs.* COLUMBIAN FIRE
PROOFING COMPANY.

FRANCIS P. MURPHY, administrator, *vs.* SAME.

JOHN H. DUNCAN, administrator, *vs.* SAME.

Suffolk.   March 12, 13, 1902. — September 2, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*Negligence*, Employer's liability, appliances, assumption of risk, Contributory.   *Evi-
dence*, Hearsay, Materiality, Admissions.   *Employers' Liability Act*, Dependent
for support under.   *Master and Servant.*

If a contractor, who has put a platform hoist in a building to carry up materials for
construction, adopts a rule forbidding men to ride upon the hoist and posts signs
on or near it reading "Dangerous.  Keep out," yet if the notice is so openly dis-
regarded by the contractor's superintendent and acting superintendent and by
others in their presence as to become a dead letter and if the contractor and his
agents know that his employees commonly disregard the notice and openly ride
upon the hoist with the sanction of the contractor's representatives, this justi-
fies a finding that employees of the contractor killed by the falling of the hoist
when they were riding on it were doing so by the contractor's invitation.

If a question calling for hearsay is asked and answered without objection, and an-
other question then is asked and answered, it is too late to object to the first
question or to ask to have the answer to it stricken out, as the answer although
hearsay has become evidence by its admission without objection.

In an action for the death of a workman of the defendant caused by the falling
of a hoist for materials on which the defendant contended that workmen were
forbidden to ride, evidence, that the hoist was used by the defendant's super-
intendent and acting superintendent and by workmen riding with them as a
means of access to the different parts of the building, is admissible as tending
to show an implied invitation by the defendant's representatives to use the
hoist for this purpose.  Further evidence that the foreman also used the hoist
in the same way and that other workmen often were seen riding with him, also
is admissible, as, if it was a common practice for workmen to use the hoist in
this way, the jury might infer that it was known to the defendant, and, if so, it
was evidence of an invitation.

In an action under St. 1887, c. 270, § 2, for the death of the plaintiff's intestate, the
intestate's mother testified that the intestate said to her ten days before the ac-
cident: "Mother, don't feel troubled.  I will help you all I can.  I will see
to send you money every two weeks."  *Held*, that the evidence was admissible,
the fact that the statement and promise were made and accepted being some
evidence that the mother depended upon the intestate for support.

In an action against one of several contractors engaged in constructing a building
for the death of a workman caused by the falling of a hoist for materials on
which the defendant contended that workmen were forbidden to ride, a witness
called by the defendant testified, on cross-examination, that the defendant's
superintendent had told him about two weeks before the accident not "to take

up any more men on this elevator outside of my own men " except the foremen of two other contractors mentioned, and that after this the witness had taken up the defendant's workmen at work under the superintendent and had taken up the plaintiff's intestate in the presence of the superintendent and acting superintendent, with loads and without loads, and that when they went up without loads in the presence of the superintendent and acting superintendent no objection was made to it. *Held*, that this was evidence of invitation, and also evidence that the notice not to ride on the hoist did not apply to the defendant's " own men " but to men employed by other contractors except the two foremen mentioned.

In actions under St. 1887, c. 270, § 2, each for the death of an employee, it was held that each of the following persons could be found to be next of kin " dependent upon the wages of such employee for support", namely, the mother of the employee, a poor widow, who had other sons living with her and 'paying board, to whom the employee sent $10 before his father's recent death and whom he had promised after that death to help all he could and to send money every two weeks ; — the father of the employee in Ireland, destitute, feeble and not able to work, living with a married son to whom he had conveyed his farm, the employee having at several times sent his father money ; — the father of the employee in Nova Scotia having a mortgaged place, owning two steers and two cows, and living with a wife and three sons, working at farming and fishing, the three sons working about the place, and to whom the intestate who had been away from home four years had sent money five or six times a year about $8 at a time.

It cannot be said as matter of law that a hoist for materials in a building in process of construction is overloaded, when it has upon it two wheelbarrows weighing about one hundred and eighty-five pounds each and eight men, and no more men could have got on, and therefore if the hoist falls under these circumstances, it cannot be said as matter of law that the last man who got on was wanting in due care on account of an overloading being apparent.

It is not as matter of law want of due care for a workman in a building in process of construction to use a hoist for materials in going from the upper to the lower part of the building instead of descending by ladders, if going up and down by the hoist was one of the ordinary ways, although the ladders might have been safer.

In an action for the death of a workman of the defendant caused by the fall of a hoist for materials on which he was riding, it appeared, that the wire rope supporting the hoist parted near the eye bolt, having been weakened first by hammering the wire into shape in passing it through the eye and secondly by the want of a thimble in the eye over which the rope passed to protect the wire from wearing on the eye bolt and on itself. *Held*, that the risk of the hoist falling was not an obvious one which the workman assumed in going upon it ; that so far as the defect consisted in the wire having been injured by hammering the defect was not obvious, and so far as it consisted in not using a thimble, although this was apparent to the eye, the lack of a thimble was not such an imperfection as would be known to an ordinary workman of the usual intelligence, and therefore was not a risk which he assumed.

A workman employed by a contractor in the construction of a building is in the contractor's employ while going at the noon hour from the eighth floor to the basement in order to eat his dinner.

It is evidence of negligence in causing the fall of an elevator or hoist for materials, that the wire rope supporting it parted near the eye bolt and that the rope had

been weakened first by hammering the wire into shape in passing it through the eye and secondly by the want of a thimble in the eye over which the rope passed to protect the wire from wearing on the eye bolt and on itself.

If there is evidence that certain wooden signs warning persons not to ride on a hoist for materials, produced in court by a defendant sued for a death caused by the fall of the hoist, are not the signs that were posted on or near the hoist at the time of the accident, although testified to be such, the presiding judge would be justified in instructing the jury that if either of the parties had put in testimony knowing it to be false they had a right to take that into consideration when they came to weigh the testimony. The jury might decide that fraud and deceit would not be made use of in support of an honest defence.

THREE ACTIONS OF TORT under St. 1887, c. 270, § 2, respectively by the administrators of three workmen of the defendant, for the death and conscious suffering of their intestates caused by the fall of a hoist for materials constructed by and belonging to the defendant on which the intestates were alleged to be riding by the invitation of the defendant while in its employ. Writs dated July 14, 1898, August 5, 1898, and May 15, 1899.

At the trial of the cases together in the Superior Court before *Richardson*, J., the jury returned a verdict for the plaintiff in each case in the sum of $5,000, $4,000 being awarded for the death and $1,000 for conscious suffering. Later, on orders of the judge, the plaintiff in each case remitted $2,000 from the $4,000 award. The defendant alleged exceptions.

The defendant's tenth and twelfth requests for instructions referred to in the next to the last paragraph of the opinion were as follows: "10. That upon all the evidence in these cases the act of Henry in inviting men on to the elevator, if such an invitation was given just prior to the falling of the same, was not an act of superintendence and not such an act which, if negligent, would subject the defendant to liability in any of the cases here on trial." "12. That upon all the evidence in these cases the act of Henry in going on to the hoist at the time it fell was not an act of superintendence and not such an act which, if negligent, would make the defendant liable for any injury to any one of the plaintiffs."

*C. W. Bartlett & E. R. Anderson*, for the defendant.

*J. E. Cotter*, (*T. F. McAnarney* with him,) for the plaintiffs.

LORING, J.  These were three actions brought to recover damage for the death and conscious suffering of three employees of the defendant.

It appeared that the defendant was one of several contractors engaged in the construction of a building in the city of Boston. The defendant's portion of the work consisted in putting in the fire proofing materials. The plaintiffs' intestates were injured by the falling of a material hoist on which they were coming down from the eighth story shortly after twelve o'clock, noon, to eat their dinners.

It appeared that the hoist was erected by the defendant to carry up material used by it in constructing the building. It was an open platform on which were two uprights connected at the top by cross pieces, through which was a king bolt set up by a nut underneath; the king bolt ended in an eye in which was an iron wire cable; the cable was passed through the eye twice and was fastened by two half hitches. At the time of the accident the cable went over a sheave fastened to a cat head in the ninth tier of beams, which tier of beams made the roof. The cable in question was a new one, bought when the cat head was shifted from the sixth to the ninth tier of beams within two weeks before the accident, because the cable previously used was not long enough for the hoist with the cat head in its new position.

The standing part of the wire rope parted near the eye bolt, when the hoist was between the eighth and seventh stories, and the hoist fell to the bottom, a distance of over one hundred feet.

There was evidence from which the jury were justified in finding that the defendant had been negligent in fastening the wire rope to the head piece of the hoist in two respects, first, in hammering the wire rope in making the turns through the eye and thereby injuring the metal and weakening the strength of the rope, and, secondly, in not putting a thimble in the eye of the king bolt over which the rope would pass and thus protecting the wire from wearing on the eye bolt and on itself. In that connection there was also evidence that the lack of a thimble had been called to the attention of the defendant's superintendent, and that he had promised to have one put on.

The record consists of one hundred and eight pages; the defendant took seven exceptions to the introduction of evidence, made twenty-three requests for rulings, and excepted to over two

pages of the judge's charge.  Under these circumstances we shall discuss the points made in its brief, and not otherwise deal with the particular exceptions.

The most important question raised by the defendant corporation is whether it owed to the intestates the duty of using due care to have the hoist in a safe condition on the one hand, or whether on the other hand the intestates took the hoist as they found it.

It appeared that the defendant had put up three signs: two on the upright on which the hoist ran, one in the basement and the other up one flight, and the third on the head of the hoist itself.  These signs were "Dangerous.  Keep out."  There was also evidence that the general manager of the defendant corporation had adopted a rule forbidding men to ride upon the hoists and that signs to that effect should be posted on them ; and that this rule had been communicated by him to Taylor, who was the defendant's superintendent of the work at the building in question.  No ladders had been put in the building by the defendant corporation, but there were two sets of ladders there, put in by other contractors, and the defendant's superintendent testified that he expected the defendant's employees to use them. The defendant also put in evidence that its employees, including the three in question, had been warned by Taylor, at some time previous to the accident, not to ride on the hoist, and that Duncan had been discharged for so doing and had been taken back on his promising not to do so in future.

On the other hand there was evidence that Taylor himself rode up and down on the hoist every day he was there ; that Henry, who was in charge when Taylor was absent, did the same thing ; that Taylor was absent on the day of the accident and Henry was one of the persons on the hoist when it fell at the time in question; and, lastly, that the employees had been told both by Taylor and Henry to use the hoist in place of the ladders because it saved time, and that the hoist was used by the men continually in the presence of each of them.

The principal contention made by the defendant is that under the notices which were posted and which the intestates must have seen if they had exercised due care, they had no right on the hoist at the time in question and took the hoist as they

found it. The presiding judge left it to the jury to decide in substance whether the notices had been so openly disregarded by the superintendent Taylor and acting superintendent Henry and by others in their presence as to have become a dead letter, and that if they found that the defendant or its officers or agents knew that its employees commonly disregarded the notice and openly rode upon the hoist in the presence and with the sanction of the defendant's representatives, this would justify them in finding that it was done by invitation.

We are of opinion that the instruction was right. The notice in question, if it was addressed to employees at all, was one forbidding employees to use the hoist at all, and not a notice like that in question in *McNee* v. *Coburn Trolley Track Co.* 170 Mass. 283, stating the terms on which they could ride. In case of such a notice the continual and open violation of the notice is evidence from which the jury may find that it is no longer in force and that it has been abandoned. *Sweetland* v. *Lynn & Boston Railroad,* 177 Mass. 574.

The business in which the intestates were employed by the defendant took them to the different stories of the building, and if the hoist was commonly and openly used by the employees in the presence of the superintendent and acting superintendent, in going to and coming from the places where they were at work, the jury could find that they had been impliedly invited to use it for that purpose. *Hanlon* v. *Thompson,* 167 Mass. 190. The defendant relies on the testimony of Taylor that at some time previous to the accident Duncan had been discharged for riding on the hoist and that all the employees had been warned not to do so. Apart from the fact that it does not appear when these two occurrences took place, the jury had a right to disbelieve this testimony.

The other objections may be disposed of shortly.

A witness called by the plaintiff, after testifying that Griffin, one of the intestates, had been in this country seven years before he was killed, that she had some talk with him in April before his death and that he told her that he sent money home then, was asked the question, "Did he say anything about his father?" and to that question the witness answered, "Well, yes. He said his father was getting on, very feeble, and wasn't able to do

anything at the time." After another question had been asked and answered, the defendant objected to the answer to this question and made a motion that it be stricken out, without assigning any reason. The defendant now contends that the time referred to in the answer was April before Griffin died, the time when he sent the money, and that there was no evidence on which the presiding judge could have found that the deceased made the statement testified to on his personal knowledge, as required by St. 1898, c. 535. R. L. c. 175, § 66.

We assume that the time referred to in the answer was April preceding the accident; but, even if we assume that there was no evidence on which the presiding judge could find that the declaration testified to was made " upon the personal knowledge of the declarant," we are of opinion that the exceptions must be overruled. It is hard to see how the defendant was injured, as another witness, Nora Griffin, testified to the same facts and there was no evidence to the contrary. But it was too late to take the objection. The question asked was not limited to declarations under St. 1898, c. 535, but called for any hearsay evidence. If the defendant objected to hearsay evidence generally, he should have objected to the question as too broad. The answer was responsive and no broader than the question. The answer to the question, although hearsay, became evidence by not being objected to. *Damon* v. *Carrol*, 163 Mass. 404. After allowing the broad question to be answered and thus getting the benefit of the answer if favorable to it, it was too late for the defendant to object to the question or to the answer on seeing that the answer was an unfavorable one.

The next objection is to testimony that the hoist was used by the superintendent and acting superintendent and by other workmen riding with them, as a means of access to the different parts of the building; this was some evidence of an implied invitation by the defendant (whose representatives the superintendent and acting superintendent were) to use the hoist as a means of access to the different parts of the building. The witness in question was allowed to testify further that the foreman also used the hoist in the same way, and that he had often seen other workmen riding with the foreman. If it was a common practice for workmen to use the hoist in this way, the jury might infer that

it was known to the corporation; if so, it was evidence of an invitation.

The mother of one of the intestates testified that her son the intestate said to her ten days before the accident: "Mother, don't feel troubled. I will help you all I can. I will see to send you money every two weeks." The fact that that statement and promise were made to her and accepted by her was some evidence that she in fact depended upon the intestate for support.

One Smallcomb, who was in charge of the engine on the day of the accident, was called as a witness by the defendant. On cross-examination he testified that the superintendent had told him about two weeks before the accident not " to take up any more men on this elevator outside of my own men, except the foreman of the Boston bridge and Pray's foreman." The witness was then allowed to testify against the defendant's objection and exception that after that he had taken the defendant's workmen at work under the superintendent, and that he had taken the intestates up in the presence of the superintendent and acting superintendent, with loads and without loads, and that when they went up without loads in the presence of Taylor and Henry no objection was made to it. The defendant's objection to this is that it was no evidence of invitation. We think that it was, and that it also was evidence that the notice did not apply to " my own men," but to men employed by other contractors, with the exception of the two foremen mentioned.

We are of opinion that there was evidence that each of the intestates had next of kin who were dependent on them for support.

It appeared that Boyle was twenty-five years of age and had not lived at home for four years; that his father died on May 5, twelve days before the accident, leaving a widow and one son in addition to the intestate. The widow testified that all she had for support after her husband's death were " the four walls of the house, and his relief, and one of the boys. I depended on him and another boy. . . . I had nothing to live upon, only depending on him and another of my boys." It also appeared that during his father's lifetime the intestate had sent his mother $10. On cross-examination it appeared that the widow had a

son who was not living at home when the intestate died but came home and lived with her after that; that she had two other sons, John and Francis; that each of the three paid $4 a week for board; and that she had two younger sons, one of whom paid $2 a week board, and the other lived with her and apparently did not pay board, although " he worked." In addition there was the promise of the intestate already considered by us. We are of opinion that this was sufficient evidence that the widow was in fact dependent on the intestate. *Mulhall* v. *Fallon*, 176 Mass. 266. In *Hodnett* v. *Boston & Albany Railroad*, 156 Mass. 86, relied on by the defendant it affirmatively appeared that the sister was able to earn wages, but the evidence introduced here tended to show that the intestate's mother could not do so.

It appeared that Griffin had a father in Ireland sixty-five years of age, old, destitute, feeble and not able to work, living with a son on a farm which had been his before the son was married, when he conveyed it to the son with whom he was living; and that the intestate said in April before the accident that " he sent money home then," and before that he said " he had sent money in [the previous] December " ; and on a former occasion " a few years before that," he had borrowed $5 of the witness to make up the sum of $15 to send to his father. We are of opinion that this was sufficient.

It appeared that Duncan had a father in Nova Scotia who had a place with a mortgage on it and a wife and three sons; that he worked farming and fishing; that he had not been a well man for many years; that he had heart disease; that he had four head of cattle, two steers and two cows; and that his three sons lived with him and worked about the place. The intestate had been away from home for four years, and had sent money to him five or six times a year, about $8 at a time, the last time being in the winter or spring before the accident. In our opinion this was sufficient evidence that the intestate had next of kin who were dependent on him for support. See in this connection *McNary* v. *Blackburn*, 180 Mass. 141, arising under Pub. Sts. c. 100, § 21.

The defendant's next contention is that the plaintiffs' intestates were as matter of law not in the exercise of due care be-

cause they might have gone down by the ladders, and it was apparent that the hoist was overloaded. On the hoist were two wheelbarrows, weighing about one hundred and eighty-five pounds apiece, and eight men, and no more men could have got on. We cannot say as matter of law that the hoist was overloaded, nor can we say as matter of law that it was careless to use the hoist rather than the ladders; on the evidence the jury could have found that the ordinary way, or one of the ordinary ways of going up and down was by the hoist. The defendant urges that the ladders were safer and therefore the intestates were negligent in using the hoist; but stairs are safer than a passenger elevator, yet we do not think that a person who uses a passenger elevator in place of stairs can be said as matter of law to be guilty of contributory negligence.

The defendant next contends that the risk was obvious and was assumed by the intestates. So far as the defect consisted in the metal of the iron wire cable having been injured by the use of a monkey wrench in hammering it into shape in passing it through the eye bolt, the defect was not obvious — it was not apparent to the eye; so far as it consisted in not using a thimble, although this was apparent to the eye, the lack of a thimble was not such an imperfection as would be known to an ordinary workman of the usual intelligence, and therefore was not an obvious risk which he assumed.

The defendant's next contention is that the intestates were not in the employ of the defendant when the accident occurred. This contention is based upon the fact that the noon hour had come and the men were going down from the eighth floor to eat their dinner. Going from the particular part of a building where he has been set to work, to eat dinner, is an incident of a workman's employment who is engaged by the day in erecting the building in question, at least so long as he has not finished passing over or through the building to get his dinner. *Olsen* v. *Andrews*, 168 Mass. 261. *O'Brien* v. *Boston & Albany Railroad*, 138 Mass. 387. *Gillshannon* v. *Stony Brook Railroad*, 10 Cush. 228. In *Dickinson* v. *West End Street Railway*, 177 Mass. 365, on which the defendant relies, the plaintiff, a motorman, was employed by the trip. At the time of the accident he was riding on one of the defendant's cars as a passenger on a pass, after he

had completed his morning trips and had left the defendant's premises, so far as his employment was concerned.   In the case at bar the intestates had not been directed to carry their dinner with them and to eat it where they happened to be at work when the noon hour came, and they had a right to go to the basement to get it and eat it.

The defendant's next contention is that there was no evidence of negligence on the part of the defendant.   There was evidence that the method of attaching the cable to the hoist was negligently done in the two respects already mentioned, namely, that the metal was weakened by being hammered when it was passed through the eye bolt, and by not using a thimble to protect the part of the cable passed through the eye bolt from chafing.   The defendant introduced evidence contradicting this and tending to show that this was an ordinary manner of attaching such a cable to such a hoist.   It was for the jury to decide whether this was or was not negligence on all the evidence.   We are of opinion that the jury were warranted in finding that the cable broke from one or both of the two causes mentioned above.   One witness testified that "it broke not quite under the centre of the eye bolt, but very near the centre of the eye bolt where it crossed the other piece, where it crossed the turn."

The defendant had no right to have the tenth and twelfth requests given.   The plaintiffs relied on a general implied invitation to use the hoist in going up and down the building in the course of the employment in which their intestates were engaged ; there was no occasion to instruct the jury on a special invitation apparently not relied on by the plaintiffs.   The act of Henry was not claimed to be an act of superintendence, but to be one of a series of acts by the defendant's employees, whether superintendents or not, which could have been found to be known to the defendant and which being done with the defendant's knowledge amounted to an implied invitation.   The jury were instructed that the mere fact that Taylor and Henry rode up and down on the hoist was not a sufficient invitation by the defendant to the intestates to use the hoist for the purpose of riding up and down on it.

The presiding judge instructed the jury that if they found that one party or the other had put in testimony knowing it to

be false they had a right to take that into consideration when they came to weigh the testimony. It is stated that "during the trial the defendants produced three signs which they claimed were taken down from the building where the accident occurred on the morning after the accident, which evidence was contradicted." What the signs produced in evidence were we do not know. The fact that the signs had become broken and partly torn from their fastenings and the lettering thereon indistinct or illegible was relied on by the plaintiffs. It may be that the jury were warranted in finding that the signs produced in court were not the ones posted up at the time of the accident. If that was the case it is not contended that the instruction was unwarranted. See *Egan* v. *Bowker*, 5 Allen, 449; *Hastings* v. *Stetson*, 130 Mass. 76; *Simes* v. *Rockwell*, 156 Mass. 372.

*Exceptions overruled.*