JOHN BRADY *vs.* NEW YORK, NEW HAVEN, AND HARTFORD
RAILROAD COMPANY.

Hampden.    September 22, 1903. — October 20, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence,* Employer's liability.    *Railroad.    Evidence.*

In an action by a car inspector employed in a freight yard of the defendant, for injuries alleged to have been caused by the negligence of the defendant's superintendent or of a person in charge and control of a train of the defendant, it appeared, that the defendant's yard master was the only person who controlled the switching of trains in the yard, and, although he had no right to order a car to be moved until the train of which it was a part had been inspected by the plaintiff, any order from him to the switching crew would be obeyed whether the inspection had been completed or not, and that, while the plaintiff in the course of his duty as inspector was repairing a car, the yard master caused six' or seven cars, which had formed part of the same train, to be moved forcibly against the car which the plaintiff was repairing, so that it knocked him down and ran over him. *Held,* that there was evidence that the yard master was a superintendent exercising superintendence within the employers' liability act, and that he also was a person in charge or control of a train.

In an action by a car inspector employed at night in a freight yard against the railroad company employing him, for injuries received while the plaintiff was at work repairing a car, from other cars being moved forcibly against it by order of the defendant's superintendent, the fact that the plaintiff had not placed a blue signal upon the car on which he was working, as required by a rule issued by the defendant, does not as matter of law constitute contributory negligence on his part, if there is evidence on which the jury can find that the defendant had acquiesced in an abandonment of the rule, and that the plaintiff, although he knew of the promulgation and assertion of the rule, properly might assume that it was no longer in force.

In an action by a car inspector employed in a freight yard against the railroad company employing him, for injuries received while the plaintiff was at work repairing a car, from other cars being moved forcibly against it by order of the defendant's superintendent, the plaintiff may show, upon the issues of his due care and the defendant's negligence, that, three weeks before the accident, a train on which the plaintiff was at work making repairs was moved before the repairs were finished, and that the superintendent then promised the plaintiff, that thereafter he would not order any car to be moved under such circumstances until after the plaintiff had notified him that the repairs had been completed.

In an action by a car inspector employed in a freight yard against the railroad company employing him, for injuries received while the plaintiff was at work repairing a car, from other cars being moved forcibly against it by order of the defendant's superintendent, the plaintiff, upon the issue of the negligence of

the superintendent, may introduce evidence to show that under the circumstances so many cars, as were run against the one on which the plaintiff was working, could not be sent down properly with only one brakeman upon them.

TORT, under St. 1887, c. 270, for injuries received by the plaintiff while at work in the freight yard of the defendant at Westfield. Writ dated September 23, 1901.

At the trial in the Superior Court before *Fox*, J., the jury returned a verdict for the plaintiff in the sum of $4,000; and the defendant alleged exceptions.

*W. S. Robinson*, for the defendant.

*W. H. McClintock*, for the plaintiff.

BARKER, J. The plaintiff was a car inspector employed at night in the defendant's Westfield yard. It was his duty upon the arrival of a train to inspect all its cars. If he found a car defective, it was his duty to repair it where it stood, if possible; otherwise to have it set out from the train. His tour of work was from six o'clock in the afternoon until seven o'clock the next morning. During this time ten to thirteen freight trains came in, each composed of from thirty to thirty-five cars. About one o'clock in the night of August 16, 1901, two freight trains entered the yard in close succession, each containing cars to be inspected and shifted in the yard. The engines which drew in these trains were at once detached and taken to the round house leaving the cars standing in the yard on two separate tracks. The cars thus left standing were thenceforth in the charge of one Horrigan the conductor of the yard or yard master, and were not to be moved without his direction. For the purpose of moving them there was a switching engine with its engineer and fireman and a switching crew all of whom were under Horrigan's orders.

Upon the arrival of a train the inspection of its cars was the first thing to be done, and Horrigan had no right in the proper discharge of his duty to cause any car to be moved until the train in which it was had been inspected; but he in fact had the power to cause any of the cars to be moved as he might order, whether the inspection of the train had or had not been completed.

Upon the arrival of the two trains it was known both to Horrigan and the plaintiff that one of them had broken in two

and that some repairs to a car which stood next to the place where the broken train was parted would have to be made by the plaintiff.

He ascertained from Horrigan that the latter desired to deal first with the other train, and proceeded to inspect that train. When that inspection was completed he proceeded to inspect the broken train and to repair the defective car where it stood. In the meantime Horrigan by means of the switching engine and crew was dealing with the first train. Having finished with that train he then began to deal with the cars of the second train and so caused six or seven of its cars to be moved forcibly against the defective car which the plaintiff then was repairing and which knocked him down and ran over him.

The case was left to the jury upon the third count upon the issue whether the plaintiff's injury was due to the negligence of Horrigan as a superintendent, and upon the fifth count upon the issue whether the injury was due to the negligence of Horrigan while in charge and control of a train.

After a verdict for the plaintiff the case is here upon the defendant's exceptions, which were to the admission of evidence, to the refusal to give certain instructions requested, and to " the instructions given to the jury not in harmony with the defendant's requests."

1. The defendant contends that Horrigan was neither a superintendent nor a person in charge or control of a train, for whose negligence the plaintiff can recover.

There was evidence tending to show that the department of inspection was distinct from that in which Horrigan and the switching crew were employed, and that the plaintiff was not under Horrigan's orders, and that the latter had no right to order a car to be moved until the train of which it was a part had been inspected by the plaintiff. Assuming all these things as facts of the situation yet the jury could find that Horrigan in his capacity as conductor of the yard or yard master was in fact a person and the only person who had the right to control, and who by his orders to the switching crew did control, and cause, all the moving of cars in the yard; and that any order from him to the switching crew to move a car or cars was to be obeyed, and was obeyed, regardless of whether the inspection of the

train had been completed or not. The switching crew acted upon his orders, and upon his orders only, and he gave and they obeyed the order in the execution of which the cars were let down against the car upon which the plaintiff was making repairs. Although Horrigan was not upon those cars, and a brakeman was upon them, and although the plaintiff was not at work under Horrigan but in a distinct department of the defendant's service, we think that Horrigan was within the meaning of the employers' liability act a superintendent exercising superintendency in ordering the letting down of the cars, and also a person in charge or control of the train. This is because all that was done or was to be done as to moving the cars was done and was to be done solely under his direct order and supervision.

2. Another contention of the defendant arises from the facts that on May 21, 1899, the defendant had issued a rule contemplating the placing of a blue signal on or at the end of a car, engine or train under or about which workmen are at work, and that on September 27, 1900, and December 3, 1900, circular letters were issued calling attention to the rule, and that copies of these rules and circulars were in and about the yard and known to the plaintiff, and that he had placed no such signal to protect the car which he was repairing, but relied only upon the fact that Horrigan knew that the plaintiff was to repair the car where it stood, and that Horrigan had in effect promised not to cause any of the cars to be moved until the plaintiff had notified him that the repairs had been completed.

The defendant asked an instruction that upon all the evidence the plaintiff was guilty of contributory negligence in failing to observe the rule with reference to blue signals. This was not given and the jury were allowed to find whether the rule was at the time of the accident a rule of the company in force as such, and a practicable rule which could and should have been regarded by the plaintiff at that time, or whether the defendant understood that it had become a dead letter and had acquiesced in its abandonment.

While the question is somewhat close we cannot hold that the presiding judge was wrong in allowing the jury to find an abandonment of the rule by the defendant. Long continued practice

to the contrary of what is prescribed by such a rule, it is held, may have the effect to show that the rule is superseded or waived or abandoned.  *McNee* v. *Coburn Trolley Track Co.* 170 Mass. 283, 285, and cases cited.  *Sweetland* v. *Lynn & Boston Railroad*, 177 Mass. 574, 579.  *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 98.

In the present instance there was abundant evidence tending to show that the rule had been disregarded constantly in the Westfield yard.  That yard was substantially in the centre of an important transportation system and was a point where all cars were inspected whenever brought into it.  It is apparent that circumstances to which the rule would apply and in which it must be either followed or disregarded must have been of almost constant occurrence in the yard.  The jury could have found that it had always been disregarded there and that no action had been taken by the defendant for the enforcement of the rule by disciplining those who did not comply with it, and no action whatever with reference to it for more than eight months next before the date of the plaintiff's injury.

In addition to this the jury could have found that it was difficult to comply with the rule, which when repairs were to be made upon a car forming a part of a train would compel the repairer to place a signal at each end of the train and to remove the signals upon the completion of his work.  The defendant's officers might well be presumed to know the habitual conduct of its employees in such an important yard.  *Sweetland* v. *Lynn & Boston Railroad, ubi supra.*  The jury might find also that although the plaintiff knew of the previous promulgation and assertions of the rule he properly might assume that its force had ceased.  *McNee* v. *Coburn Trolley Track Co., ubi supra.*

3. The considerations stated show that the defendant's requests so far as they were not given were refused rightly, and the exception to the charge was general as not in harmony with the requests.  The other exceptions were to the admission of evidence.  Of these several were to the admission of a conversation which took place between the plaintiff and Horrigan in the yard in the presence of the switching crew about three weeks before the time when the plaintiff was hurt.  The evidence admitted tended to show that, cars having been moved

in a train on which the plaintiff was at work making repairs before he had finished his repairs, Horrigan promised that thereafter he would not order any car to be moved under such circumstances until after the plaintiff should have notified him that the repairs were completed.  The defendant contends that this evidence should have been excluded because not competent to show an abandonment by the defendant of the rule mentioned as to the placing of blue signals.  But the evidence was competent upon the questions of the plaintiff's due care, and of Horrigan's negligence.

The other exceptions of this class were to evidence upon the question whether under the circumstances in which Horrigan caused the cars which collided with the one on which the plaintiff was at work to be sent down upon it by the switching crew so many cars as he sent could be sent properly with only one brakeman upon them.  The evidence seems in the actual aspect of the case as disclosed by the bill of exceptions to have been of very little if any importance.  But we cannot say that it was not competent upon the question of Horrigan's due care or negligence in sending down the cars which came against the one on which the plaintiff was at work.

*Exceptions overruled.*