GEORGE C. VON ETTE's (dependent's) CASE.

Suffolk.     November 16, 1915. — February 29, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Workmen's Compensation Act.*

If a compositor in the employ of a newspaper corporation, who works at night on the sixth floor of his employer's building in a room that is ill-ventilated and is very hot in summer, on a hot summer night, following a practice that prevails among the compositors working in the room, in order to get away from the heat and get into the fresh air descends a fire escape stairway to the roof of an adjoining building belonging to his employer and falls off a part of the roof twenty-three feet away from the stairway where there is no railing, and is killed, his death can be found to have resulted from an injury that arose out of and in the course of his employment within the meaning of St. 1911, c. 751, Part II, §§ 1, 6.

In the case stated above there was no direct evidence of suicide or that the deceased workman was under the influence of liquor. It appeared that when he left home to go to work that night he told his wife that he would be at home at two o'clock the next morning, that he was of a cheerful disposition and apparently in good health, contented and happy, that he had made an appointment to go

the next day with a fellow workman to visit a certain place of interest and had made arrangements to attend an evening recital to be given by his sister, that he last was seen alive at about eleven o'clock at night and that his dead body was found the next morning at a quarter before four o'clock upon the ground six stories below the floor on which he worked and under the part of the roof that had no railing. *Held,* that a finding was warranted that the employee did not commit suicide, that he was not under the influence of liquor and that his death was accidental.

In the case stated above it appeared that one of the rules of the employer, which was posted on the premises, was as follows: "No employee shall leave the composing room during working hours, except on office business, without permission of the man in charge," but it was found by the Industrial Accident Board that there was an established custom among the employees, which was known to the employer, to go upon the roof for the purpose of obtaining fresh air, and that going upon the roof was an incident of the employment of the deceased employee. *Held,* that the board were warranted in finding that the rule was not in force at the time of the accident, and also that the act of the deceased in going on the roof on a hot night was incidental to his employment.

CROSBY, J. This is an appeal from a decree entered in the Superior Court * under the workmen's compensation act. The facts as disclosed by the evidence are briefly as follows:

George C. Von Ette, the deceased, was in the employ of the Globe Newspaper Company, in Boston, as a compositor. He met his death on the night of June 21, 1914. He went to work on the evening of June 21, and his employment for that night would have been finished at a quarter before two o'clock the next morning. He was last seen alive about eleven o'clock. His dead body was found the next morning at a quarter before four o'clock upon the ground six stories below the floor where he worked. The injuries which caused his death resulted from falling from the roof of the building adjoining the room in which he worked. When the deceased left his home to go to work that night, he told his wife that he would be at home on the two o'clock car the next morning. He was apparently in good health; he was cheerful in disposition, and there was no evidence tending to show any trouble between him and his wife. He was apparently contented and happy. He made an appointment with one of his fellow workers to visit the new fish pier on the next day. He also made arrangements to attend a recital on the following Monday evening to be given by his sister. It was a common practice of the workmen employed in the room with the deceased to go upon the roof of a building on the employer's

* By order of *Morton,* J.

premises for the purpose of getting fresh air, the compositors' room where the men worked being very warm, in the summer time, the temperature sometimes being one hundred and ten degrees, and warmer than the temperature outside.

The arbitration committee found "that on the morning of June 22, the employee went from the room in which he was working, to the roof, it being a hot night and he being in need of fresh air; and while on the roof he accidentally slipped and fell to the ground below where he met his death. . . . From the roof to the roof below there is a stairway of iron, as used in ordinary fire escapes." There was an iron railing which extended along the edge of a part of the roof, but there was no railing on that side of the roof at the place above where the body of the deceased was found.

The committee further finds "that on the night the employee met with the injury, following the custom which had prevailed in the establishment, he went upon the roof; that it was a hot night; that the ventilation in the room where he worked was poor and he went out to get the fresh air; that the building adjoining on the roof of which the employee went was the property of the employer. There is no evidence in the case pointing to any other reason for his going upon the roof except . . . to get away from the heat and get into the fresh air, and we further find that in so doing he was within the scope of his employment and that the injury arose out of and in the course of his employment."

The Industrial Accident Board took two views of the premises, one in the daytime and the other at night, and made a decision based upon their observations taken at the views, upon the evidence heard and reported by the arbitration committee, and upon other evidence presented at the hearing on review. The record contains all of the evidence presented to the committee and to the board.

One of the office rules of the employer posted on the premises was as follows: "No employee shall leave the composing room during working hours, except on office business, without permission of the man in charge." The board finds that there was an established custom among the employees, known to the employer, to go upon the roof for the purpose of obtaining fresh air, and that it was an incident of the employment of the deceased to go upon the roof. The board also finds as follows: "That sometime toward midnight of

June 21, or early in the morning of June 22, the employee went from the room in which he was working, the room being hot and the work being slack, to the roof of the Devonshire Street building, which is part of the Globe premises, he being in need of fresh air, and it being customary to use this roof for that purpose, and that while on this roof he accidentally walked over the edge, or became dizzy and slipped off, into the areaway and fell to his death. We find that in going upon said roof he was acting within the scope of his employment and that his death was the result of injuries arising out of and in the course of his employment. We find that he did not commit suicide and that he was not under the influence of liquor."

The insurer contended that the findings made by the committee and by the board were not warranted, and requested the board to rule that, as matter of law, no compensation could be awarded. Whether this ruling should have been given depends upon the questions: (1) Did the deceased voluntarily take his own life or was his death the result of a condition of intoxication or was it due to his accidentally falling from the roof? (2) If the injury and death resulting therefrom were due to an accident, did the injury arise out of and in the course of the employment of the deceased?

If the deceased met with his injury by reason of his serious and wilful misconduct, no compensation can be awarded, and it may be conceded that, if he voluntarily took his life or if his fall from the roof was due to a condition of intoxication, the ruling requested should have been given. It has been held repeatedly that in cases arising under the act, in order that an award of compensation may be made, the burden of proof rests upon the claimant to show by a preponderance of the evidence that an injury occurred and that it arose out of and in the course of the employment. The determination of these issues cannot be left to speculation, surmise or conjecture. If the evidence upon the questions involved is slender but is sufficient to satisfy a reasonable man, a case has been made out in favor of the claimant. A finding of the Industrial Accident Board is not to be set aside if warranted by the evidence although we might feel that a different conclusion would have been reached by us if we had been called upon to decide the question in the first instance. If this claimant were required to prove all the facts and circumstances attending her husband's death by direct evidence,

it is plain that her claim would fail, but she is not limited to such proof. She may show the existence of such facts as would warrant the inference that her husband did not commit suicide and did not meet with his death as the result of intoxication. *Commonwealth* v. *Doherty*, 137 Mass. 245. *Commonwealth* v. *Kennedy*, 170 Mass. 18, 25. *Colburn* v. *Spencer*, 177 Mass. 473. *Bigwood* v. *Boston & Northern Street Railway*, 209 Mass. 345. *Sponatski's Case*, 220 Mass. 526. There was no evidence of suicide, and therefore the presumption against the commission of a crime is enough to support the finding on that point. *Commonwealth* v. *Mink*, 123 Mass. 422. *Sponatski's Case*, 220 Mass. 526. *Furnivall* v. *Johnson's Iron & Steel Co. Ltd.* 5 B. W. C. C. 43. There was no evidence to show that he was under the influence of liquor. The board having found that the employee did not commit suicide and was not under the influence of liquor, and no other cause of death having been suggested except that he accidentally fell off the roof, we cannot say that the finding of the board that his death was accidental was not warranted.

The insurer further contends that the evidence aoes not warrant a finding that the employee's death arose out of and in the course of his employment. If we assume that it would be a violation of the rule to go upon the roof during working hours without seeking permission for the purpose of obtaining fresh air, the question is whether the rule was in force at the date of Von Ette's death, or whether it had been waived by the employer. There was ample evidence of a general practice of the men who worked in the composing room to go upon the roof to get fresh air and cool off on hot nights and that such practice was known to the employer. We are of opinion that the board were warranted in finding that the rule was not in force but had become a dead letter at the time of the accident. *McNee* v. *Coburn Trolley Track Co.* 170 Mass. 283. *Sweetland* v. *Lynn & Boston Railroad*, 177 Mass. 574. *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 98. *Brady* v. *New York, New Haven, & Hartford Railroad*, 184 Mass. 225. *Cutts* v. *Boston Elevated Railway*, 202 Mass. 450, 456. *Crowley* v. *A. O. H. Widows' & Orphans' Fund*, 222 Mass. 228.

The question whether the injury arose out of and in the course of the employment is one of some difficulty. A majority of the court are unable to say that the finding of the board was wrong. The acci-

dent happened upon the premises of the employer and we think, in view of the practice which might have been found to exist under which the men went upon the roof for fresh air, that the act of the deceased in going there on a warm night was not necessarily outside his employment, but could have been found to be incidental thereto. An injury to a workman may arise out of and in the course of his employment even if he is not actually working at the time. *Sundine's Case,* 218 Mass. 1. *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93. *Blovelt* v. *Sawyer,* [1904] 1 K. B. 271. *Moore* v. *Manchester Liners, Ltd.* 3 B. W. C. C. 527.

The fact that the unprotected place upon the roof where it is found the deceased fell off is twenty-three feet away from the foot of the stairway is not decisive against the claimant. He could have been found to be rightfully upon the roof and was not bound to remain at the foot of the stairs or on any particular part of the roof. We cannot say as matter of law that the board was not warranted in finding that the injury arose out of and in the course of the employment even if the deceased fell from the roof at a place twenty-three feet from the stairway. We cannot say that the board has drawn inferences which no reasonable man could draw, and for that reason we cannot set aside its findings. Upon principle, aside from authority, the findings of the Industrial Accident Board were warranted. The conclusion which we have reached is abundantly supported by the decisions of the English courts. *Marshall* v. *Owners of Steamship Wild Rose,* [1910] A. C. 486. *Fletcher* v. *Owners of Ship Duchess,* [1911] A. C. 671.

We have examined all the questions raised by the appeal, but do not discover any reversible error. A majority of the court are of opinion that the entry should be

*Decree affirmed.*

The case was argued at the bar in November, 1915, before *Rugg,* C. J., *Braley, De Courcy, & Crosby,* JJ., and afterwards was submitted on briefs to all the justices except *Carroll,* J.

*S. H. Batchelder,* for the insurer.

*C. L. Carr,* for the dependent widow.