## AIME DUBE'S (dependent's) CASE.

Suffolk.    March 15, 1917. — May 23, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act. Evidence,* Inferences, Matter of conjecture.

Upon a claim under the workmen's compensation act by the dependent mother of
   a boy eighteen years of age at the time of his death, who was employed as a
   bobbin stripper in a mill and was killed by being caught by the hanging belt of
   the main shaft and pulled up into the shafting, the arbitration committee found
   that the death of the employee was due to his trying to take some waste from
   a pulley on the main shaft in a manner entirely beyond the scope of his employ-
   ment. This finding was based upon the uncontradicted testimony of all the
   eyewitnesses of the accident confirmed by the declaration of the employee just
   before he died. The Industrial Accident Board, after taking a view of the place
   of the accident and inspecting the machinery and shafting, made a finding con-
   trary to the findings of the arbitration committee and contrary to the contentions
   both of the employer and the claimant, basing their conclusion upon the board's
   declared disbelief of the testimony of every eyewitness of the accident and solely
   upon the inferences drawn by the board from their view of the place of the acci-
   dent and their inspection of the machinery. One of the findings of the board was
   that the employee, when he left his machine, did so "temporarily to go to the
   toilet, or for some other purpose incidental to his employment," and this infer-
   ence was attempted to be founded on the single fact that the toilet and the
   water tank were in the direction of a certain machine that was near the place
   where the employee got caught in the shafting. Another finding, which was
   founded on no testimony, was that "the belt suddenly left the pulley" and
   "lashed against [the employee] as he passed." *Held,* that there was no evi-
   dence to sustain a conclusion that the injury resulting in the death of the
   employee arose out of his employment, and that the finding of the Industrial
   Accident Board to that effect was unwarranted by the testimony and unsup-
   ported by any rational inferences.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board making an award to Virginia Dube, as the mother of Aime Dube partially dependent upon him for support at the time of his injury and death, he having been employed as a bobbin stripper at the Boott Mills in Lowell.

In · the Superior Court the . case was heard by *Fox*, J. The findings of the arbitration committee and the evidence before them as reported to the Industrial Accident Board and also the findings of that board and the inferences drawn by them from their view of the place of the accident are stated or described in the opinion. The judge made a decree in accordance with the decision of the Industrial Accident Board; and the insurer appealed.

*E. C. Stone*, (*G. Gleason* with him,) for the insurer.

*W. H. Shea*, (*A. L. Eno* with him,) for the dependent mother.

PIERCE, J. The arbitration committee visited the mill, saw the place where the deceased was employed and · observed the bobbin· stripping machines, the roll winder and the pulleys . by which they were operated. At the hearing before the committee "It was agreed that the conditions were the same as they existed at the time of the accident to Dube except that the pulley at the extreme end of the main shaft and the pulley on the roll winder had been moved over so that they were on the other side of the roll winder, further away from the bobbin strippers." Upon the uncontradicted testimony of all the eyewitnesses of the accident confirmed by the declarations of the employee just before he died, the arbitration committee found the following facts:

"The deceased, who was eighteen years of age at the time of his death, was injured on October 18, 1915, by being caught in the main shaft in the room where he was employed as a bobbin stripper at the Boott Mills. It was agreed that his average weekly wages were $7.74. He was trying to take some waste from a pulley on the main shaft and got caught by the belt and was taken round the shafting. He died about 6:30 in the evening of the same day. There were three other bobbin strippers employed with Dube, each operating a bobbin stripping machine. These four machines were all set in one table situated in an open space at the end of the loom room. Dube worked at bobbin stripping machine No. 4, which was the one nearest the side of the room and the window and the one farthest away from the shafting which was the cause of his death. Machine No. 3 was operated by Willingdor Langevin, aged nineteen. Machine No. 2 was operated by a non-English speaking Greek, and machine No. 1 was operated by Romeo Martell, aged seventeen. At the end of

the bench which contained these four bobbin stripping machines and adjacent to Martell's machine was a machine used in stripping defective bobbins, called the roll winder, a different kind of machine than that operated by boys. This machine was connected by a belt with a pulley at the extreme end of the main shaft and about above where Martell stood when working. The pulley which operated the bobbin stripping machines on which the boys were employed was about twelve inches or fifteen inches from the pulley which operated the roll winder at the end of their bench. On the morning of the accident there was some waste caught in the shafting and the pulley at the extreme end of the shafting which operated the roll winder. Dube left his own machine, walked round, stopped Martell's machine, threw the belt off the roll winder, hung a weight on the belt to keep it from being caught up in the shafting, climbed up on Martell's machine, pulled out a knife and attempted to cut the waste from the shafting. In a moment he became caught in the hanging belt and was pulled up in the shafting. It was two or three minutes before the power was stopped and he was taken down. Dube spoke to no one from the time he left his own machine until he was taken down from the shafting."

Upon a claim for review and a request for a rehearing on all the facts, the Industrial Accident Board viewed the scene of the accident and inspected the location of the accident, machinery and shafting, once before the taking of testimony and once again after the hearing had begun. The same witnesses appeared before the board, and in substance the same testimony was given as appeared and as was given before the committee on arbitration, except that the declarations of the employee were excluded in the findings of fact, which facts as found by the Industrial Accident Board were as follows: "We find, upon all the evidence, that Aime Dube, the decedent, on October 18, 1915, while in the employ of the Boott Mills and working at a bobbin stripping machine, between seven and eleven o'clock in the morning, left his machine temporarily to go to the toilet, or for some other purpose incidental to his employment, and while passing the loom winder machine, was caught in a pulley belt and taken up round a rapidly revolving shaft, striking against the ceiling of the room in which he was working and thereby sustaining personal

injuries which resulted in his death on the same day; and that said personal injuries and death arose out of and in the course of Dube's employment."

To arrive at the foregoing conclusion of fact the Industrial Accident Board had to disbelieve the testimony of every eye-witness of the accident and discredit the contentions of the employer and the claimant. This result in detail is summed up by the board as follows: "We do not believe and, therefore, find that Dube did not, just before the accident, throw the lever on the bobbin stripping machines stopping them; that he did not hang a weight on the belt of the 'roll winder;' that he did not climb. nor stand upon the bobbin stripping table; that there was no waste on the 'roll winder' pulley at the time of the accident; that he did not take out his knife in an effort or attempt to cut the waste from the pulley in question." Affirmatively, without any testimony, the board find as an inference of fact from the fact that the toilet or water tank was in the same direction as the loom winder, that Dube "left his machine temporarily to go to the toilet;" that the "winder was not located at the end of the bobbin stripping table," as every witness testified, but was located in the middle of the shaft between the beams and six or seven feet away from the bobbin stripping table; and that the "belt suddenly left the pulley, lashed against Dube as he passed, and that it is. likely that in an effort to disengage himself he got tangled in the belt, as a result of which he was carried up into the shafting to his death."

With the testimony of all witnesses disbelieved, the only evidence for the consideration of the board was the inferences of fact as to the nature and cause of the accident which it legitimately could draw from its view and inspection of the location of the accident, machinery and shafting. *Morse* v. *Hill,* 136 Mass. 60, 70. *Lonergan* v. *Peck,* 136 Mass. 361. *Beers* v. *Prouty & Co.* 203 Mass. 254, 257. *Hyslop* v. *Boston & Maine Railroad,* 208 Mass. 362, 367. *Wakefield* v. *American Surety Co.* 209 Mass. 173, 177.

Whatever else could have been found by the board as a rational inference of fact from its knowledge of the location of the accident, machinery and shafting, it is plain that it could not find (except as a matter of pure conjecture and speculation) that Dube, when

he left his machine, did so "temporarily to go to the toilet, or for some other purpose incidental to his employment," from the single and mere fact that the location of the toilet and water tank was in the direction of the winder machine. Nor could it infer, in the absence of any testimony, that "the belt suddenly left the pulley" and "lashed against Dube as he passed." *Sponatski's Case*, 220 Mass. 526. *Von Ette's Case*, 223 Mass. 56. *Sanderson's Case*, 224 Mass. 558, 561.

There was no evidence whatever to sustain a conclusion that the accident arose out of the employment. The finding of the Industrial Accident Board to that effect was entirely unwarranted by the testimony and also unsupported by any rational inference. *Savage's Case*, 222 Mass. 205.

The decree is reversed and a new decree is to be entered in favor of the insurer.

*So ordered.*