JONATHAN DOW'S (dependent's) CASE.

Suffolk. October 15, 1918. — November 27, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Workmen's Compensation Act. Proximate Cause.*

In a claim under the workmen's compensation act by the dependent of an employee, who was found dead with his throat cut by a dangerous machine on which he worked and into which he had fallen, the burden of proof is upon the dependent to show that the employee was alive when he fell into the machine.

A boy of nineteen was employed as the tender of a beaming machine, which wound yarn on a revolving beam. He had one very badly diseased lung and the valves of his heart were shrunken. Nobody saw him fall into the machine, but his body was found lying on the machine with his throat cut by it. There was blood two or three feet away from the machine "as if it was all one spurt" and there was a little blood on the machine. A few moments before the accident he had talked with his foreman in front of his machine and was apparently all right. These facts were shown in a claim made by his dependent under the workmen's compensation act. The uncontradicted testimony of the only expert witnesses was to the effect that, as to whether the boy was dead when he struck the machine or whether he was living and the machine caused his death, it was as reasonable to say one thing as another, and that it would be absolutely impossible for any doctor to say definitely whether or not he was dead when he struck the machine. The Industrial Accident Board found that the "evidence showing that there was a spurting of blood as far as three feet from the gash in the throat indicated the strength of the heart as alive and forceful at the time," and awarded compensation to the dependent. On an appeal from a decree of the Superior Court in accordance with this decision, it was *held* that this court could not say as matter of law that the conclusion of the board was unsupported by the evidence.

In the same case it was contended by the insurer that, assuming that the employee was alive when he struck the machine, the cause of his fall was the proximate cause of his death and that the cause of his fall was unknown or conjectural, but it was *held* that the cause of his fall was the remote cause and that the fall itself was the dominant and proximate cause of the injury that resulted in death.

It also was *held* that the fall into the machine from the place in front of it where the employee was standing in the active performance of his duty arose out of and in the course of his employment.

In the same case it was *said* that the test in such a case is to consider, whether the danger of injury from a fall into or upon the machinery then being used by an employee is an incident of his employment and one to which he would not have been exposed apart from that employment.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the

Industrial Accident Board, affirming the findings and decision of a single member of that board, awarding compensation to Lillian M. Dow, the partially dependent mother of Jonathan Dow, an employee of the American Tire Fabric Company nineteen years of age, who was the tender of a beaming machine or beamer and died on June 20, 1917, after, as alleged, sustaining the injury described in the opinion.

The decision of the Industrial Accident Board from which the appeal was taken was as follows: "The Industrial Accident Board affirm and adopt the findings and decision of the board member; and find that the death of the employee was due to a personal injury which arose out of and in the course of his employment as a beamer tender for the subscribers on June 20, 1917; that from some unknown cause, but in all probability in view of the physical conditions disclosed by the autopsy, from 'collapse as a result of his condition,' he fell over into such a position on his machine that his hand and arm were drawn into the machine and his body pulled down so that his neck came across a revolving beam, causing the severing of all the arteries and resulting in the employee's death; that the employee was not dead when he fell upon the machine; that the average weekly wages of the employee were $13; that he contributed the sum of $8 a week to the support of the claimant, Lillian M. Dow, his mother, during the twelve months next preceding the date of his injury and death; that she was in fact partially dependent upon him for support and entitled to a weekly compensation of $5.34 from the insurer for a period of five hundred weeks from June 20, 1917."

The case was heard by *Wait*, J. The evidence reported by the Industrial Accident Board is described in the opinion. The judge made a decree in accordance with the decision of the Industrial Accident Board; and the insurer appealed.

*G. Gleason & E. C. Stone*, for the insurer, submitted a brief.

*H. I. Bartlett, (O. H. Nelson* with him,) for the dependent.

PIERCE, J. The deceased employee was a beamer tender in the employ of the American Tire Fabric Company. As such, it was his business to see that yarn was wound round a revolving beam, or cylinder, which had a beam head with a flat surface and an edge about five eighths of an inch wide. Back of the beam upon which the yarn is wound is a roll four or five inches in diameter,

which presses against the beam; and there is a long leverage which goes to the ceiling and there gives compressed leverage. Because of the pressure roll the beamer tender is never supposed to pass his hand across the yarn to see whether it is running smoothly. If anything was wrong with the machine it was the duty of the employee "to put his foot on the treadle and stop the machine."

A few minutes before the accident the deceased, apparently all right, talked to his foreman in front of his machine. No one saw the accident. The machine was stopped almost immediately after the accident. The deceased was found with his left arm in the machine and his right arm outside the beam. "His left hand and arm were caught in and his right arm was lying outside 'toward the large cam the other side of the cogwheel.' . . . The carotids and jugular vein were severed. . . . The windpipe was severed and all the muscles were 'pretty well torn.'" When the machine was reversed and the body removed, life was extinct. There was blood two or three feet away from the beamer "as if it was all one spurt," and a little blood on the machine. The body was embalmed, not by the usual process, but the fluid was put into the abdominal cavity which fluid more than offset the weight of blood lost. Two weeks after the death of the employee an autopsy was made. The physician who performed the autopsy testified: "that the right lung was practically atrophied but there was function. The left lung was nearly normal. The valves of the heart were shrunken. There was evidence of vegetations of the mitral valve. He did not make a microscopic examination of the lungs. He further testified that the diseased lung was one of the worst lungs he had ever seen. The left lung was the one that performed the function of the lungs and from his examination he would have looked for endocarditis or myocarditis or possibly both. There was and had been endocarditis and that would involve the valves of the heart. Endocarditis would be an affliction of tuberculosis of the lungs, particularly in its late stage. The vegetations found might cause aortic regurgitation. He further testified that a subject such as this, in the last stages of tuberculosis would be toxic and stated that there would not be sufficient aspects in the lungs to give him the necessary oxygens to keep up an illuminative process. Dow, in his opinion, was dying on his feet and he did not and could not reason out how he could hold

down a working position. It was his opinion that Dow's heart was weak and that further he was poorly nourished. In answer to the question 'whether from his autopsy he could say Dow was dead by the time he struck the machine,' the doctor testified that if there had been no injury as a result of the fall on the machine and Dow had been attacked, he would have expected at the time he performed the autopsy that the man was in the last stages of tuberculosis with a consequent affection of the heart and that he dropped dead, but having his throat cut there was a chance that he had a collapse as a result of his condition and fell and got his neck cut."

Manifestly the burden of proof was upon the dependent to prove that the alleged injury to and death of the employee were sustained and resulted while the employee was alive, and that it arose out of and in the course of his employment. Upon the uncontradicted testimony of the two and only expert witnesses (if believed) to the effect that, whether the boy was dead when he struck the machine or whether he was living and the machine caused his death, it is as reasonable to say one thing as another; and that whether or not he was dead at the time he struck the machine would be absolutely impossible for any doctor to say definitely, the member and the Industrial Accident Board warrantedly could have found that the solution of the question remained one of pure conjecture. But the member and the board were not bound to believe or to accept the conclusions of these witnesses; and they had the right, based upon reasonable inferences drawn from the facts established by the evidence before them, to find, as they did, that the employee was not dead when he fell upon the machine, but was living and the machine caused his death. The member and the board based that finding principally upon the fact that the "evidence showing that there was a spurting of blood as far as three feet from the gash in the throat indicated the strength of the heart as alive and forceful at the time." *Von Ette's Case*, 223 Mass. 56. See *Sanderson's Case*, 224 Mass. 558. We cannot say as matter of law that the conclusion of the member and board was unsupported by the evidence.

The insurer next contends that "if the employee was alive when he struck the machine, the cause of his fall was the proximate cause of his death, and that cause is unknown or conjectural." It

is quite plain the cause of the fall was the remote cause, and that the fall itself was the dominant and proximate cause which placed the body of the employee in such relation to revolving parts of the machine that the edge of the beam head pressed against the neck of that person in such manner as to sever the carotids, tear out the neck and cause death. *Bohaker* v. *Travelers Ins. Co.* 215 Mass. 32, 35, and cases cited.

The insurer finally contends that the fall did not arise out of the employment. Indisputably the injury occurred during the course of the employment, and the fall into the machine was from the place in front of the machine where the employee was standing in the active performance of his duty.

The real question is not so much the cause of the fall or whether the fall as such arose out of the employment, but whether the risk and harm of a fall into or upon machinery then in use by an employee are incidents of that business and hazards to which the workman would not have been exposed apart from that business. *McNicol's Case*, 215 Mass. 497, 499. *Wicks* v. *Dowell*, [1905] 2 K. B. 225. We think the injury arose out of and in the course of the employment. *Brightman's Case*, 220 Mass. 17. *Mooradjian's Case*, 229 Mass. 521. *Hallett's Case*, 230 Mass. 326, 328.

*Decree affirmed.*