## Charles A. McMahon's (dependent's) Case.

Suffolk.    October 19, 20, 1920. — November 24, 1920.

Present: Rugg, C. J., De Courcy, Crosby, Carroll, & Jenney, JJ.

*Workmen's Compensation Act*, Injuries to which act applies.  *Evidence*, Presumptions and burden of proof, Matter of conjecture.

Upon a claim for compensation under the workmen's compensation act by the dependent mother of one who met his death while employed as a "bus boy" in a restaurant, it appeared that the dining room and kitchen of the restaurant were on the second floor of a building, that an elevator ran from the basement of the building to and beyond the second floor, that the opening from the elevator well at the second floor was into the kitchen and was by means of doors, one moving up and the other down in opening, that, when the doors were locked or fastened, they could be opened only from within the elevator, that at times the doors failed to catch as they came together, that then they could be opened from outside the elevator and that if, when that was done, the lower door did not open all the way down, where there was a catch to hold it, it would close of itself.  There was evidence that the operator of the elevator finished his employment at six o'clock in the evening and left the elevator in the basement and that the doors into the elevator well at the second floor were closed.  There was no evidence that the doors were fastened, nor any evidence that they were open. It appeared that, if the elevator was "not stopped right still," it would "gradually work" up or down, "whichever way the power is."  When last seen, between 6:15 and 6:30 o'clock in the evening, the employee had completed a task in the kitchen of cleaning a water cooler and was standing beside the elevator well.  From one to ten minutes later an outcry was heard and his dead body immediately afterwards was found at the bottom of the elevator well. The elevator then was at the top of the shaft and the doors into the well on the second floor were closed.  It was no part of the employee's work to operate the elevator and he had been instructed not to use it and not to go near it.  *Held,* that all the facts and circumstances shown and every reasonable inference therefrom left conjectural what the employee was doing when he fell into the well and what was the exact cause of his death; and that the claimant therefore had not established her claim.

Certification, filed in the Superior Court in proceedings under the workmen's compensation act, of a decision of the Industrial Accident Board finding and ruling that Charles A. McMahon met his death from injuries which arose out of and were sustained in the course of his employment by D. L. Page Company, and awarding compensation to his mother.

In the Superior Court by order of *Fox*, J., a decree was entered in accordance with the decision of the Industrial Accident Board. Material facts found by the board are described in the opinion. Both the claimant and the insurer appealed.

*S. E. Qua*, for the claimant.

*J. W. Cronin*, for the insurer.

CARROLL, J. Charles A. McMahon was killed on the night of September 9, 1918, between six and seven o'clock. At the time of his death he was fifteen years of age. The dining room and kitchen of the restaurant, where he was regularly employed as a "bus boy," were on the second floor of the building. In one corner of the kitchen there was a freight elevator. Its shaft extended from the basement to the top of the building and was guarded by heavy doors which were supposed to be closed and fastened when the elevator was not at the floor. He had been engaged in cleaning a water cooler situated in a passageway between the dining room and kitchen. At a quarter past six, when this work was finished, he was seen by the head waiter and when next seen he was standing in the kitchen near the elevator. The employee who saw him in this position stated that she did not know how long he had been there, that she went from the place where she was working to the sink, about half way across the kitchen, and returned immediately, when an outcry was heard, and the dead body was found at the bottom of the shaft. It was estimated that from one to ten minutes elapsed from the time he was last seen alive until the outcry was heard.

The upper and lower doors of the elevator, guarding the entrance to the shaft, when locked or fastened could be opened only from the inside of the elevator. At times the doors failed to catch as they came together. When this happened, the doors could be opened from the kitchen by downward pressure on the lower door, and, if so opened, and it did not open all the way down to the bottom, where there was a catch, to hold it open, it would close of itself. There was also evidence that the catch holding the door open "might not be released when the elevator went up." The elevator operator testified that he finished his work at six o'clock and left the elevator in the basement and the doors on the second floor were closed. No one testified the doors were open, and there was no evidence that they were locked or fastened.

When the boy was found, according to the evidence, the elevator was at the top of the shaft and the doors on the second floor were closed. It also appeared that if the elevator "is not stopped right still, it will gradually work" up or down, "whichever way the power is."

If there is any evidence or if it can be rationally inferred that the employee fell into the elevator well while in the course of his employment either because the doors were open, or he accidentally fell against them and pushed them open, then the finding of the Industrial Accident Board must stand. It was no part of the employee's work to operate the elevator. He had been instructed not to use nor "go near it" and if there is no evidence to support the finding of the board or if on the whole evidence and drawing every reasonable inference, it can only be conjectured in what manner and from what cause he met his death, so that the mind is left in suspense and doubt whether he was at the time within the scope of his employment or attempting to use the elevator for purposes of his own, and where one conclusion is as rational as the other, then the cause of his death is a matter of mere speculation and it has not been shown as required by the workmen's compensation act, that the injury arose out of or in the course of his employment. *Dube's Case,* 226 Mass. 591. *Sanderson's Case,* 224 Mass. 558. *Savage's Case,* 222 Mass. 205.

Even if the evidence showing that the doors were closed at six o'clock was discredited, there was nothing to show they were open, and unless they were open at the time of the injury the fatality could not have occurred. The boy may have accidentally opened them by falling against them, or he may have intentionally opened them for the purpose of using the elevator; but what actually happened on the evidence disclosed is entirely a matter of conjecture.

According to the operator's testimony, the elevator was left by him in the basement. After the fatality, it was found at the top the shaft. If the employee attempted to operate it, the position of the elevator would be accounted for. On the other hand, there was evidence that when the elevator was not fully stopped, it would gradually move in the direction of the power, and if the board could assume that because of this the elevator could gradually move to the top of the shaft, it was still a matter

of doubt what caused it to rise. The elevator may have been entirely stopped by the operator. The direction of the power may have been such that the elevator would not ascend, and on all the evidence it could not be reasonably inferred, to the exclusion of other inferences, that the elevator moved from its position at the basement by the mere force of the power, or was started by some one other than the employee himself. Taking all the facts and circumstances shown, and drawing every reasonable inference, it is not disclosed in what manner or from what cause the doors became open, and no satisfactory explanation is given for the location of the elevator at the top of the shaft. What the employee was doing at the time or the exact cause of the fatality cannot be proved with any degree of certainty. These are all matters of pure conjecture and the claimant's case is not established. *Sanderson's Case, supra. Savage's Case, supra. Dube's Case, supra.*

The case at bar is clearly distinguishable from *Von Ette's Case,* 223 Mass. 56.

As the claimant cannot recover we have not considered the other questions argued.

*Decree reversed.*
*Decree for the insurer.*