EXIAS BELANGER'S (dependent's) CASE.

Suffolk.    January 12, 13, 1931. — January 29, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Dependency. *Proximate Cause. Evidence*, Matter of conjecture.

In proceedings under the workmen's compensation act, there was evidence that the employee, who was engaged in carrying coal in a wheelbarrow on his employer's premises, was found dead lying across the wheelbarrow, which was loaded with coal; that the side of his face was against the handle of the wheelbarrow and bore a mark "like the shape of the handle"; that the day was extremely cold; that the exposed parts of the employee's body were frozen; that the ground at that place was covered with trampled snow and was slippery; and that it was possible for the employee, upon slipping, to knock his head against the handle of the wheelbarrow and become unconscious. Although the death certificate offered in evidence stated the cause of death as "probable heart Disease and exposure," the testimony of the employee's personal physician and of other witnesses was uniformly to the effect that he had not been suffering from any disease previous to his death. *Held*, that

(1) There was no evidence to warrant a finding that the employee had suffered from heart disease which caused him to fall and strike his head upon the handle of the wheelbarrow;

(2) The evidence did not leave the cause of death a mere matter of conjecture: findings were warranted that the employee slipped and struck his face on the handle of the wheelbarrow, whereby he was stunned for sufficient period to permit his body to freeze; that he died as a result thereof; and that his death arose out of and in the course of his employment.

There was further evidence in the proceedings above described that the employee's daughter had lived with him since her marriage some five years before his death; that the employee each week gave her three-fifths of his wages, keeping the rest; that she had two children; that her husband had not earned enough to support his family in the year previous to the employee's death; and that the daughter had been ill in the two years previous thereto and had paid out substantial sums for medical services. *Held*, that a finding was warranted that the daughter was partially dependent upon the employee and entitled to partial compensation.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Material evidence and findings by the single member of the board, which were affirmed and adopted by the board on review, are stated in the opinion. In the Superior Court, a decree was entered by order of *Bishop*, J., in accordance with the board's decision. The insurer appealed.

*H. B. White*, for the insurer.

*T. Leboeuf*, (*J. C. Genereaux* with him,) for the claimant.

CROSBY, J. The employee originally was employed by the Perryville Woolen Company as a millwright, machinist and engineer. For some time before his death he was doing general work and was tending the boilers. He worked seven days a week. His weekly wages were $50. His daughter, who is the claimant, her husband and the employee lived together. She has lived with her father and husband ever since her marriage in 1925. She testified before the single member that her father paid her each week $30 out of his wages and kept the rest.

Shortly before and at the time of his death the employee was engaged in carrying coal in a wheelbarrow from a pile to the mill. The last time he was seen alive was soon after two o'clock in the afternoon of February 16, 1930. There was evidence tending to show that at that time he was in good health and spirits. At about a quarter of six o'clock that night his body was found lying on the wheelbarrow near the coal pit. He was dead, and the exposed parts of his body were frozen. The wheelbarrow at that time was loaded with coal. There was a mark on the right side of his face about four inches long and extending from his mouth to his ear, which was "like the shape of the handle" of the wheelbarrow, and the right side of his face was against the handle of the wheelbarrow. A physician called by the insurer testified that a man could slip and knock his head against the handle of a wheelbarrow and become unconscious without any dent at all. There was evidence that it was extremely cold on the day in question, with a temperature of eleven degrees below zero at three o'clock in the afternoon and three degrees below at about six o'clock that night. There was further evidence that on the day the employee died

there was snow on the ground which had been tramped down by carrying coal from the coal pile to the mill, and that at the place where the employee was found the ground was slippery.

The single member found that at the time the body of the employee was found the ground around the coal pile was covered with snow which had been tramped down hard and was slippery; that the employee slipped while wheeling the wheelbarrow filled with coal from the coal pile toward the boiler room; that he struck his face on the end of the handle of the wheelbarrow and was stunned for a sufficient period of time for his body to become frozen by the extreme weather and that he died as a result thereof; that there was a depression along one side of the employee's head about four inches long and one eighth of an inch deep throughout its entire length.

The single member also found that the claimant was the employee's daughter and only next of kin; that she lived in a house owned by the employer, and the rent was paid by the deceased; that she was partially dependent upon his earnings for support and was entitled to partial compensation at the rate of $6 a week for a period of five hundred weeks subject to the provisions of the act. The insurer filed a claim for review, and the Industrial Accident Board upon all the evidence and the inferences to be drawn therefrom affirmed and adopted the findings and decision of the single member, and also allowed counsel fees of $50 including costs to be paid by the insurer in full payment for all services rendered by the claimant's attorney, this allowance being made under the provisions of G. L. c. 152, § 10, as amended by St. 1930, c. 208. A decree was entered in the Superior Court in accordance with the findings and decision of the board, from which the insurer appealed.

It is the contention of the insurer that the cause of the death of the employee is based upon conjecture and speculation and that the evidence did not warrant a finding that his injury and death arose out of and in the course of his employment. The insurer also contended

that as matter of law the claimant is not a dependent of the deceased employee. It is argued by the insurer that it could be inferred that the cause of the fall of the employee and the striking of his head upon the handle of the wheelbarrow and his subsequent death by freezing were due to a heart attack. The death certificate which was offered in evidence by the insurer states that the cause of death was "probable heart Disease and exposure."

It is well settled that the cause of an injury or death must occur in the course of the employment and arise out of it. These facts cannot be found on mere surmise or conjecture, but it is not necessary to the award of compensation that the claimant should prove the precise cause which produced the injury or death. *Bean's Case,* 227 Mass. 558, 560. "The burden of proving the essential facts necessary to establish a case warranting the payment of compensation rests upon the dependent in a case arising under the workmen's compensation act as much as it does upon a plaintiff in any proceeding at law. The dependent must go further than simply to show a state of facts which is as equally consistent with no right to compensation as it is with such right." *Sponatski's Case,* 220 Mass. 526, 527–528. At the time of the employee's injury he was upon his employer's premises and was engaged in the regular work which he was required to perform. There was evidence tending to show that he was fifty-two years of age and was " slight and light, but wiry "; that he never made any complaint of pain in the chest or anything of that nature; that he did not consult a physician during the ten years before his death so far as known by his daughter with whom he lived; that two years before his death he took out an insurance policy, for which he was examined, including an examination of his heart. It may reasonably be inferred that, as the policy was issued at that time, no affection of his heart was discovered.

It appears from the evidence that he worked steadily for his employer and so far as the record shows he lost no time on account of illness. A fellow employee who

was a witness at the hearing testified that he saw him about six o'clock in the morning of the day he died and talked with him; that he then looked well and made no complaint that he was sick. Another employee, who was the last person to see the deceased alive, was called by the insurer and testified that he had a talk with the employee at two o'clock in the afternoon of the day of his death, and that the condition of the employee's health was not then or at any other time discussed. This witness further testified that he did not notice anything unusual about his condition at that time, "He didn't complain of any pain. He seemed to be in his usual spirits and was as active on the job as ever."

There was no evidence which would warrant the finding that the employee at any time was subject to a heart affection or any other disease. A physician called by the claimant testified that he was summoned soon after the body of the employee was found and that so much of the body as was exposed was frozen. He further testified that he had been the employee's family physician since 1902; that it was some years before when he last treated the deceased for anything, if ever; that the last time he was consulted by the deceased for himself was at the office of the witness in 1919. He further testified that he has no recollection that he was ever consulted by this man for treatment for heart disease of any kind, and that he thought he would recall it if he had ever been consulted by him for treatment for that disease.

Upon the entire evidence and the reasonable inferences to be drawn therefrom we are of opinion that the cause of the employee's death does not rest merely upon surmise and conjecture, but that a finding was warranted that the injury and death arose out of and in the course of the employment. "The single inquiry is whether in truth it did arise out of and in the course of that employment. If death ensues, it is immaterial whether that was the reasonable and likely consequence or not; the only question is whether in fact death 'results from the injury.' . . . When that is established as the cause, then

the right to compensation is made out. If the connection between the injury as the cause and the death as the effect is proven, then the dependents are entitled to recover even though such a result before that time may never have been heard of and might have seemed impossible. The inquiry relates solely to the chain of causation between the injury and the death." *Sponatski's Case,* 220 Mass. 526, 531. *Von Ette's Case,* 223 Mass. 56, and cases cited. *Uzzio's Case,* 228 Mass. 331. *Wooldridge's Case,* 254 Mass. 483. *Crown's Case,* 254 Mass. 496. *Johnson's Case,* 258 Mass. 489.

The case at bar is distinguishable from *Sanderson's Case,* 224 Mass. 558, *Dube's Case,* 226 Mass. 591, *Foster's Case,* 242 Mass. 386, *Chisholm's Case,* 272 Mass. 259, and other cases cited by the insurer.

Whether the claimant, who is the employee's married daughter, was a dependent presented a question of fact. The single member found that most of her support came from the earnings of her father. The evidence warranted findings that her husband had worked for less than six months during the year preceding the employee's death; and did not earn enough to support his family; that she had two children at the time of her father's death and that since that time one of the children had died; that she had been ill during the past two years and had recently come out of a hospital, and had paid $400 for medical services rendered during the year before her father's death. Upon the evidence no error of law appears in the findings that the claimant was partially dependent and entitled to partial compensation of $6 per week for five hundred weeks from the date of the employee's death. In no one of the questions argued do we find any reversible error.

*Decree affirmed.*