ALFRED HUGHES'S (dependent's) CASE.

Suffolk.    January 15, 1931. — February 24, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Workmen's Compensation Act,* Injuries to which act applies. *Evidence,* Presumptions and burden of proof, Matter of conjecture.

Evidence, in proceedings under the workmen's compensation act, that an employee at work on the third floor of a building owned by his employer, the subscriber, went for a drink of water to the second floor, where he

was seen walking in the direction of a "bubbler"; that he next was seen when he was found, severely injured, at the bottom of the elevator well; that the door to the stairway leading from the second to the third floor was in proximity to and closely resembled the fire door to the elevator well, both doors being painted the same color, although the door to the stairway was on hinges and had to be pushed open, while the fire door was a sliding door, warranted a finding by the Industrial Accident Board that the employee mistook the fire door for the door to the stairway and fell through the opening to the bottom of the elevator well, and that his injuries arose out of and in the course of his employment by the subscriber: the cause of his injuries was not left a mere matter of conjecture.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Material facts found by the single member of the board and affirmed and adopted by the board on review are stated in the opinion. By order of *Bishop*, J., a decree was entered in accordance with the board's decision.

The insurer appealed.

*G. Gleason*, for the insurer.

*M. W. Brennan*, for the claimant.

CROSBY, J. This is a proceeding under the workmen's compensation act. The employee, Alfred Hughes, received fatal injuries as the result of falling down an elevator shaft in a building owned by the insured.

There is no dispute about the facts. On November 26, 1929, the employee and one Courtermarche, a fellow employee, were working on the third floor of the building cleaning and painting the ceilings and walls. They started work about 7:15 that morning. At about nine or 9:15 o'clock Hughes told his associate that he was going to get a drink of water, and then went down to the "bubbler" on the floor below. He was seen going through a doorway that led to the stairs to the second floor. There was evidence that employees frequently got water at this bubbler which was on the second floor of the building about fifty feet from the foot of the stairway. One Mulligan, a fellow employee of the deceased, was called as a witness by the claimant and testified that at about 9:30 o'clock that morning he saw Hughes on the second flool walking

in the direction of the bubbler. There was no other evidence of his movements until he was found severely injured at the bottom of the elevator well. Another employee, Courtermarche, testified that after the accident he asked Hughes how it happened and Hughes replied that he did not know, but that he remembered going for a drink of water. He died November 29, 1929, as the result of his injuries.

In passing from the stairway door on the second floor to the bubbler one would pass by the fire door to the elevator well. Both doors were painted the same color; the fire door was a little larger and slid open while the door to the stairway was on hinges and had to be pushed to open. There was evidence that it was forty-five inches from the fire door to the door to the stairway. The fire door was on an incline with a counterweight, and was even with the wall, while the door to the stairway was recessed two feet in from the wall. On the morning of the accident the sliding door to the elevator well was closed to within a foot or eighteen inches; it could not close to any greater extent because the opening was wider than the door as the wall had been torn away to move machinery. The gate inside the sliding door had been previously removed. This door moved easily and " A man might open the door and step through and have the door slide back." The elevator was above the third floor when the accident occurred. It appears that there were two places where it was customary for the employees to obtain drinking water, one, a faucet on the third floor and the other, a bubbler on the second floor, both of them being about the same distance from where the deceased was working. The single member viewed the premises. He found and ruled that, upon all the evidence including what he observed on his view, the employee, mistaking the fire door for the door leading upstairs, fell through the opening to the bottom of the elevator well thereby causing his injury and death and that the accident arose out of and in the course of his employment. The reviewing board upon all the evidence affirmed and adopted the find-

ings and decision of the single member. A decree was entered in the Superior Court affirming the decision of the board, from which the insurer appealed.

It is settled that findings of the Industrial Accident Board will be sustained if there is any evidence to support them. *Sponatski's Case,* 220 Mass. 526. There was evidence sufficient to warrant a finding that the employee went to the bubbler on the second floor of the building and procured a drink of water, and to return to the third floor to resume his work, it was necessary for him to walk fifty feet on the second floor, pass through a doorway, and walk up a flight of stairs. The door to the elevator well so closely resembled in appearance the stairway door that he might reasonably mistake it for the door leading to the stairway. These facts are sufficient to warrant the finding and decision of the board. This case is governed by *Von Ette's Case,* 223 Mass. 56, and other later decisions of this court. In *Von Ette's Case* it appeared that the deceased went onto a roof on the employer's premises adjoining the room where he worked for the purpose of obtaining fresh air on a hot summer night and fell from the roof. There was no evidence to show what caused him to fall, but it was held that it could reasonably be inferred that his injury and resulting death arose out of and in the course of his employment. In *Dow's Case,* 231 Mass. 348, the only evidence that the employee was alive when he was caught in a machine was that blood spurted three feet from him when he was injured. This was held sufficient to justify a finding that his injury and death arose out of and in the course of his employment. In *Wooldridge's Case,* 254 Mass. 483, there was no eye witness to the accident but there were " specific physical facts affording a definite conception of the way in which the injury to the employee occurred."

The present case does not rest upon mere surmise and conjecture. It is a reasonable and natural inference that the deceased went to the bubbler and obtained a drink of water, and thereafter started to return to his work on the third floor; that in so returning, as the two doors were in

proximity to each other and were painted the same color, he mistook the fire door for the door leading upstairs and fell down the elevator well. He was upon the premises of his employer and it is a reasonable inference that the accident occurred as found by the single member and by the board. Although under the act a claimant must sustain the burden of proof, he is not required to produce evidence which will exclude every possibility that the injury and death did not arise out of the employment. *Von Ette's Case, supra.* In *Doyle's Case,* 256 Mass. 290, where the employee, a nurse, testified that she mistook for the door leading to a bath room a doorway leading down a flight of stairs and fell and was injured, it was held that her injury could have been found to have arisen out of and in the course of her employment. The fact that she was not killed, but testified that she mistook one door for another, does not differentiate that case in principle from the case at bar where a rational inference was justified upon all the evidence that the deceased's death was caused by a similar mistake. That an injury to an employee arising from a mistake in doors is a hazard of employment is settled by *Doyle's Case, supra.* The case is governed by *Sundine's Case,* 218 Mass. 1, *Sponatski's Case, supra, Von Ette's Case, supra, Dow's Case, supra, Wooldridge's Case, supra, Haskins's Case,* 261 Mass. 436, *Cooper's Case,* 271 Mass. 38, and *Jarvis's Case, ante,* 305; and is distinguishable from *Sanderson's Case,* 224 Mass. 558, *Dube's Case,* 226 Mass. 591, *McMahon's Case,* 236 Mass. 473, *Foster's Case,* 242 Mass. 386, *Chisholm's Case,* 272 Mass. 259, and other cases cited by the insurer.

It results that the entry must be

*Decree affirmed.*