ANGUS HUGH MacDONALD's (dependent's) CASE.

Suffolk.    October 9, 1931. — December 3, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act*, Injuries to which act applies.

In proceedings under the workmen's compensation act, a finding was not warranted that the employee's death arose out of and in the course of his employment, on evidence that the employee was a janitor and caretaker of three adjoining apartment buildings numbered 7, 9 and 11 on a certain street, and was authorized to collect rents and to rent apartments; that he was instructed by his employer on a certain day to go to number 11 to see what rents could be collected and to inspect certain apartments; and that after supper in the evening of the same day he left his home and was next seen when he was found dead about eight o'clock at the foot of the air shaft of number 9, down which he had fallen from the roof, there being nothing to show his movements or intentions between the time he left home and the time he went on the roof nor to show why he went thereon.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Material evidence and findings by the single member of the board, which were affirmed and adopted by the board

in review, are stated in the opinion.  By order of *Gray, J.*, in the Superior Court, a decree was entered dismissing the claim.  The claimant appealed.

*H. Lipkin*, (*H. M. Waitzkin* with him,) for the claimant.
*Ġ. Gleason*, for the insurer.

CROSBY, J.  This is an appeal by the claimant from a decree entered in the Superior Court reversing a decision of the Industrial Accident Board.  The deceased employee worked as a janitor and caretaker of the apartments owned by the Lion Realty Company at numbers 3–17 Durham Street and 7–11 Blackwood Street in the city of Boston. In connection with this employment he was authorized to rent apartments and collect rents.  On April 14, 1930, at about eight o'clock in the evening, he fell from the roof down the air shaft at number 9 Blackwood Street, and was killed.

There was evidence tending to show that on April 10, 1930, the general manager of the apartments telephoned the employee and instructed him to go to number 11 Blackwood Street and see what repairs were required, and that about noon of April 14 the general manager's secretary telephoned the employee to see what rents could be collected, and to inspect apartments that were vacant and see that they were cleaned before prospective tenants came to look at them.  The secretary was unable to state which apartments were referred to but she stated they were certain ones that were to be painted the next morning.  The evidence showed that they were those numbered 2 and 4 at number 11 Blackwood Street.  The deceased was not seen at number 11 Blackwood Street after the afternoon of April 14.

The claimant, who was the widow of the employee, testified that after supper that evening when her husband left his home he said to her, "he would have to try and get the rents that Mr. Baxter called up that morning and asked him to go over to Blackwood Street, he said he would have to try and get them and take them down the next day." Baxter was the manager's secretary.  This testimony of the conversation between the claimant and her husband was admitted without objection by the insurer.  The employee

soon after finishing his supper left the house, and the claimant was the last person so far as appeared from the evidence who saw him alive.

The three apartment houses on Blackwood Street numbered 7, 9 and 11 adjoin one another, and, by means of a flight of stairs from the top floor, the roof of each could be reached through the door of a penthouse on each building. At the time of the accident there was evidence to show that the door of the penthouse on number 9 was locked. It would, therefore appear that to reach the roof the deceased must have gone through the penthouse door on either number 7 or number 11, and the single member so found. Each apartment building had an air shaft leading from the roof to the ground. The air shafts were open and unguarded except that they were surrounded by a roof coping which was twelve and one half inches from the roof level. The distance from the penthouse door on number 11 to the air shaft at number 9, where the accident occurred, was fifty feet. A witness called by the claimant testified that he was a tenant living on the top floor of number 9 Blackwood Street; that his sitting room was on the air shaft; that about eight o'clock on the evening of April 14 he heard a noise go down by his window; that "It was down the air shaft that witness heard this noise." He further testified that he lowered a flash-light down in the air shaft and saw a man, lying at the bottom. This man was discovered to be the deceased employee.

The single member found that "On April 14, 1930, the deceased left the supper table, and no one is able to tell of his immediate movements and intentions but he did go to the roof of the Blackwood Street property and fell down the air shaft at No. 9, meeting his death instantly . . . . The deceased had a right, because of his duties, to be on the roof at any time, and the condition of the roof was a risk incidental to his employment. The burden of proof has been sustained that the employee received a personal injury arising out of and in the course of his employment which caused his death on April 14, 1930." Accordingly compensation was awarded to the claimant.

Upon a petition for review, and after a hearing, the reviewing board affirmed and adopted the findings and decision of the single member, and further found as follows: "The board find that the deceased employee had a right, because of his duties under his contract of hire, to be on the roof of the building where the fatality occurred at any time and feel that it is a fair and reasonable inference to draw from all the facts that at the time he suffered his injury, he was engaged in the course of his regular duties. Therefore, the board find that his injury arose out of and in the course of his employment."

A decree was entered in the Superior Court reversing the decision of the Industrial Accident Board and dismissing the claim for compensation; from this decree the claimant appealed.

To establish a claim for compensation under the act there must be evidence from which a finding is warranted that the injury or death occurred in the employment and arose out of it, yet it is not necessary for the claimant to prove the precise cause which produced such injury or death. *Belanger's Case*, 274 Mass. 371, 374. A claim for compensation under the act cannot rest merely on speculation or conjecture. *Sponatski's Case*, 220 Mass. 526, 527, 528.

Having these well settled principles in mind, we consider the evidence upon the view most favorable to the claimant. The undisputed evidence shows that the deceased employee was a janitor and caretaker of buildings of the employer and as a part of his employment he collected rents, rented apartments and saw that they were cleaned and put in condition for tenants. It may be assumed that as janitor and caretaker he was authorized to perform any other duties incidental to his employment. When he left his home on the evening of April 14 it was for the purpose, so far as the evidence shows, of collecting rents. There is no evidence to show that he went upon the roof for any purpose connected with his employment, or what, if anything, he did while he was there. There was no eye witness to the accident. All that appears is that he went upon the roof about eight o'clock in the evening, that a noise was heard in the air

shaft, and that he fell and thereby received a fatal injury. The burden rested upon the claimant of proving that the death of her husband arose out of and in the course of his employment. There are no physical facts from which it can be determined for what purpose he went upon the roof or how he happened to fall down the air shaft. It was said in *Foster's Case*, 242 Mass. 386, at page 388, by Jenney, J., "It is not known what the employee was actually doing at the time of the accident; that is left to surmise, speculation, and conjecture. The theory that the injury was received from a cause outside the employment is as consistent with the facts as is the supposition that it arose out of the performance of something connected with the employee's service. It is not sufficient that a belief is warranted that it was more likely to occur in one way than in another unless some facts justify that conclusion." As there was no evidence which would warrant a finding that the claimant's death arose out of and in the course of his employment, the decree must be affirmed. *Sanderson's Case*, 224 Mass. 558. *Dube's Case*, 226 Mass. 591. *Herlihy's Case*, 267 Mass. 232. *Chisholm's Case*, 272 Mass. 259.

The case at bar is distinguishable from *Von Ette's Case*, 223 Mass. 56, and other cases where a finding in favor of the claimant was sustained.

The testimony of the claimant in her direct examination that when her husband left the house he told her "he would have to try and get the rents" was a private conversation, and if objected to should have been excluded, G. L. c. 233, § 20; *Sampson v. Sampson*, 223 Mass. 451, 458, but having been admitted without objection it was entitled to its probative force. *Commonwealth v. Wakelin*, 230 Mass. 567, 576. *Diaz v. United States*, 223 U. S. 442, 450. It is apparent that the admission of this evidence did not affect the decision of the single member who found that after the employee left his house no one was able to describe his movements or intentions.

*Decree affirmed.*