NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

DUDLEY L. HALL, PETITIONER, v. BESSIE W., WARD J.
AND MUNSON G. DOREMUS, RESPONDENTS.

Decided February 24, 1934.

For the petitioner, *McCarter & English* (*Richard J. Congleton,* of counsel).

For the respondents, *Cox & Walburg* (*Arthur F. Mead,* of counsel).

\*       \*       \*       \*       \*       \*       \*

Upon the pleadings and the testimony adduced at the hearing, the following facts appear: On July 1st, 1933, and for a long time prior thereto, Dudley L. Hall, hereinafter referred to as petitioner, was employed as a farm laborer by Bessie W. Doremus, Ward J. Doremus and Munson G. Doremus, hereinafter referred to as respondents, who were the owners and operators of a certain farm situated in Towaco, Montville township, Morris county, New Jersey. His wages were $15 per week, and his hours of employment were nine and one-half per day, beginning at seven-thirty A. M.—six days con-

stituting a full week. His duties were not specific but were of a general nature pursuant to the ordinary and usual farm work. On the above day, while so employed, petitioner went to a barn shortly after seven-thirty A. M. to assist in the unloading of a wagon of hay which had been left in the barn the previous night. Upon entering the barn, petitioner proceeded to arrange the rope and tackle which were to be used in hoisting the hay from the wagon to an upper loft of the barn. It so happened that on the morning in question a cow, which was about to give birth, had been placed in a box stall, used for that purpose and located in the extreme northeastern part of the barn just opposite where petitioner was preparing the tackle. The box stall consisted of four sides of approximately three feet in height, affording an unobstructed view of the whole interior of the stall to the petitioner and others standing nearby. Being the cow's first born, the attendants encountered much difficulty in bringing about the delivery, and as an additional complication, it developed that the birth was a breech—instead of the normal method of head first, the calf was being born by hindquarters first. By reason of these unusual circumstances attending the birth, it became necessary to extract the calf by placing a rope around the hind legs of the calf and forcibly pulling same, causing the cow to moan, groan and bawl because of the pain, agony and torture as well as the hemorrhages which followed. Due solely to the observation of this ghastly and horrible sight, petitioner was overtaken by fright, fainted and collapsed, falling backwards and striking his head against the concrete floor of the barn. As a result thereof, he suffered a fracture of the skull which was followed by mastoiditis, and it is for these injuries that he brings the present proceedings to recover compensation. The testimony further discloses that one of the petitioner's co-workers was also overcome by the gruesome sight but was fortunate enough to stagger out of the barn and to fall upon soft grassy ground without sustaining any injury.

The vital question for determination is whether these facts are sufficient to establish an accident arising out of and in the course of employment, within the meaning and purview of the Workmen's Compensation act.

It is significant to note that the act is silent as to what constitutes an accident arising out of and in the course of employment. The definition of this phrase must therefore be left to judicial interpretation. Although there are many decisions of the courts of last resort in this state which have given such interpretation, I believe the rule laid down in *Byrant* v. *Fissell,* 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, clearly and fully defines the legislative meaning, viz.:

"An accident is an unlooked for mishap or untoward event which is not expected or designed. Whether an accident is expected or designed is to be judged from the victim's point of view. An accident arises out of the employment when it is something, the risk of which might have been contemplated by a reasonable person when entering the employment as incidental to it. A risk is incidental to an employment when it belongs to or is connected with what the workman has to do in fulfilling his contract of service; it may be an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment. An accident arises in the course of employment if the employe is doing what a man may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time."

Obviously, the language "accident arising out of and in the course of employment" points out a distinct and definite limitation. The words "arising out of" are clearly restrictive of the construction of the later words "in the course of," for they necessarily imply a class of injuries eliminated from the operation of the act, even though incurred by the workman during the course of his employment. In other words, an accident suffered by a workman while pursuing his duties gives him in itself no claim for compensation under the act, unless some essential relation and connection between the employment and the accident appear.

The respondents oppose petitioner's right of recovery on the ground that the accident was occasioned by fright and nervous shock due to his peculiar emotional makeup, and

not by any risk or hazard growing out of his work, and as such did not arise out of and in the course of his employment. In support of their contention, respondents have cited four cases occurring in this jurisdiction. *Schuster* v. *Perryman Electric Co.,* 11 *N. J. Mis. R.* 16; 163 *Atl. Rep.* 347; *Coslett* v. *Shoemaker,* 38 *N. J. L. J.* 116; *Smith* v. *Crescent Belting and Packing Co.,* 37 *Id.* 292, and *Lynch* v. *Newman, Ibid.* 17; but upon a careful examination and reading of these decisions, I am satisfied they have no applicability to the case under consideration. The Schuster case merely states the proposition that incapacity through nervous shock, fright and excitement, without accompanying physical impact, is not a personal injury by accident arising out of and in the course of employment. The soundness of the Schuster case, which was decided by the workmen's compensation bureau but never taken up on appeal, is seriously questioned because it apparently assumes false premises in the conclusion reached therein, namely in following the common law ruling in two New Jersey tort cases which hold that apprehension of personal injury not in fact received which is caused by the negligent act of another, will not support an action, even when physical suffering follows as a consequence of the fright; and in following a proposition stated in 1 *Schneider On Workmen's Compensation Law,* 640, as follows:

"Fright without actual physical injury is not sufficient to sustain an award of compensation under the Michigan act."

Since the Workmen's Compensation act is a remedial statute which must be construed liberally in order to carry out its beneficent purposes, it would be placing a most strained and narrow construction if the common law rule governing tort were to be applied to injuries under the act involving shock to the mental system, fright, &c. Furthermore the Michigan ruling as above referred to has since been abrogated more than ten years later, and as such, was not the holding in Michigan as cited in the Schuster case. *Klein* v. *Darling Co.,* 217 *Mich.* 485; 187 *N. W. Rep.* 400, reversing the previous Michigan holding, stands for the proposition that nervous shock under the Workmen's Compensation act is an accident

even though unaccompanied by physical trauma. Because the facts therein have a direct bearing on the case at bar, I briefly state them as follows:

"The widow and children of the claimant (appellee) made a case upon which the workmen's compensation board found that Klein, the deceased father and husband, was employed and worked in what was known as the vat room where there were fumes from sulphuric acid, which were injurious to his health and caused him to suffer from a toxic and nervous condition. He had previously enjoyed good health. On January 3d, 1920, he dropped a radiator which struck another employe on the head rendering him temporarily unconscious, but before the latter regained consciousness the former (Klein) became obsessed with an impression that his act had caused the fellow employe's death and remained so impressed until, within a few days, he died, apparently from nervous exhaustion according to medical testimony. The court held it an accident within the statute, and allowed an award of compensation to stand. Judge Wiest concurring, said: 'An accident happened in which the deceased was an actor, and the shock to him was so great and so depressed his vital forces as to kill him. We must not overlook the man's nervous system and mental makeup, and their intimate relation to his vital forces.'"

Taking up the three other cases cited by respondents which, by the way, are merely Common Pleas decisions, I find that the Coslett case furnishes little or nothing on the question of mental shock. The facts indicate that the claimant, while at work upon a temporary scaffold, constructed about a building for the purpose of erecting another building over it, was accidentally pushed off two beams upon which he stood, and fell upon a single beam and astride the same, suffering an injury to one of his testicles, resulting in its removal by surgical operation, followed by a nervous disorder described by the medical experts as "traumatic neuresthenia." Although compensation was granted the claimant for temporary disability, the court disallowed compensation for the loss of the testicle or for the neuresthenic condition. Obviously such

a narrow and strained ruling is no longer followed in this jurisdiction. The Smith case and the Lynch case are cases which have no applicability on the question of mental shock; both being death cases wherein the court held the deaths were not the result of accidents arising out of and in the course of employment—that the decedents had lost their lives solely through new and added perils to which by their own conduct they exposed themselves, not through any peril which their contract of service, directly or indirectly, involved or at all obliged them to encounter.

It is urged by petitioner that his right to recover does not rest alone because of the fright, mental shock and excitement which resulted in temporary loss of consciousness, but also because of the fall which followed, causing actual physical injuries. From the facts in the case at bar it is obvious that the accident consisted of the fall and the striking of petitioner's head against the concrete floor; that the fright and fainting spell which preceded the fall were merely provocative and excitatory factors, caused solely by conditions created by the very nature of the employment, viz., the unsightly scene to which petitioner was exposed to observation; and that the said accident arose not only in the course of employment but also arose out of the employment. While there must be some causal relation between the employment and the accident, it is not necessary that the circumstances leading up to the accident should have been foreseen or expected. The accident must, however, be one which, after the events, may be seen to have had its origin in the nature of the employment.

As previously stated the contention of the respondents rests upon the view that, by reason of petitioner's emotional infirmity which caused him to faint and fall, the injury which he sustained as a result of the fall was one which had its source outside of and disconnected with his employment, and that his employment had no causal connection with the resulting injury.

A careful search of the decisions of other jurisdictions shows that the weight of authority is contrary to this view.

In *Dow's Case,* 231 *Mass.* 348; 121 *N. E. Rep.* 19, the Supreme Judicial Court of Massachusetts had before it a suit under the Workmen's Compensation act of that state. Exemption was claimed on behalf of the industrial board upon the ground that the workman had suffered a physical collapse by reason of which he fell into machinery with which he was working. That court held that the cause of the fall was the remote cause, and that the dominant and proximate cause of his death was the fall itself, which placed the body of the workman in such relation to the revolving parts of the machine as to cause death, citing other supporting Massachusetts cases, and announced its conclusion that the injury and death arose out of and in the course of the employment.

In a more recent case, the same court had before it a situation more nearly in point. *Cusick's Case,* 260 *Mass.* 421; 157 *N. E. Rep.* 596. An employe fell upon a stairs during the course of his employment and sustained injuries from which he died. It was held that his death was compensable under the Workmen's Compensation act notwithstanding the fact that the fall occurred during an attack of epilepsy. The workman died from a fracture of the skull resulting from the fall. The court held that, if the employe was not subject to epilepsy, and fell down stairs during the course of his employment, the dependents could recover compensation, and it reasoned that the fact that he suffered from epilepsy should not bar recovery, since the protection of the statute is not limited to employes who are in good health, and that the condition of health has no more to do with the question than the lack of ordinary care, or the employer's freedom from negligence. Supporting its conclusion, the court quotes from another of its decisions (*Madden's Case,* 222 *Mass.* 487; 111 *N. E. Rep.* 379), as follows:

"It is the injury arising out of the employment and not out of disease of the employe for which compensation is to be made. Yet it is the hazard of the employment acting upon the particular employe in his condition of health and not what that hazard would be if acting upon a healthy employe or upon the average employe. The act makes no distinction

between wise or foolish, skilled or inexperienced, healthy or diseased employes. All who rightly are described as employes come within the act."

A similar question was before the Supreme Court of Connecticut in the case of *Gonier* v. *Chase Companies, Inc.*, 97 *Conn.* 46; 115 *Atl. Rep.* 677. There the very concise question presented was whether the death of the workman resulted from a fall from staging about eleven feet above the surface, caused by temporary unconsciousness due to disease, constituted an injury arising out of his employment. In the consideration of the question that court reviews numerous cases, as a result of which it announces its conclusion: "* * * that the danger of falling and the liability of the resulting injury was a risk arising out of the conditions of his employment; that the proximate cause of the injury was the fall and not the indigestion."

In a case before the Supreme Court of Illinois (*Rockford Hotel Co.* v. *Industrial Commission*, 300 *Ill.* 87; 132 *N. W. Rep.* 759), it was contended that an epileptic fit caused the workman to fall into a pit of hot cinders, and, though so severely burned that he afterwards died, it was urged that the seizure was the direct cause of the injury, and that it therefore did not arise out of his employment. The court in considering the question states as follows:

"It is generally held by the English courts and the courts of this country where the death of an employe results from a prior existing disease, like heart trouble or other impaired physical condition, while the workman was doing his ordinary work in the ordinary way, and there was no sudden, unusual or violent strain, it will not be considered an accidental death arising out of the employment within the meaning of the Workmen's Compensation act."

Thereafter the court further said:

"He did not die from epilepsy or a pre-existing disease but from the burns he received from falling into the pit. Some cases hold that where an employe is seized with a fit and falls to his death the employer is not liable because the injury did not arise out of the employment; but a majority of the

courts, American and English, hold that if the injury was due to the fall the employer is liable even though the fall was caused by a pre-existing idiopathic condition."

That court affirmed its position on the question in the recent case of *Van Watermullen* v. *Industrial Commission, 343 Ill. 73; 174 N. E. Rep. 846.*

Another case quite in point is that of *Matter of Connelly* v. *Samaritan Hospital, 259 N. Y. 137; 181 N. E. Rep. 76,* which is a very recent decision by the Court of Appeals of New York. That case involved a claim of a workman who, while employed in a laundry, was injured by a fall, which injury resulted from striking a table. The reasoning of the court is as follows:

"It is the fall and the injury resulting from it that constitutes an accident within the purview of the statute. The cause may be disregarded and the injury limited to an investigation to disclose whether the fall, having occurred, bore with it such consequences as would not have occurred except for the employment. * * * If, except for the employment, the fall though due to cause not related to the employment, would not have carried the consequences it did, then causal connection is established between injury and employment, and the accidental injury arose out of the employment. The employment has subjected the workman to a special danger which in fact resulted in injury."

In reaching its conclusion the court applied the rule that:

"Whenever conditions attached to the place of employment or otherwise incident to the employment are factors in the catastrophic combination, the consequent injury arises out of the employment."

A very recent case in the Court of Appeals of the District of Columbia holds similarly. *President and Directors of Georgetown College* v. *Stone, 61 App. D. C. 200; 59 Fed. Rep. (2d) 875.* Death resulted from burns sustained by an employe who had an epileptic fit while using hot water in the course of his employment. The court held that such facts admitted of but one lawful conclusion, that the employe's death was caused by the burns, and not by the epileptic fit,

and that the burns were inflicted by means of instrumentalities used by the employe in the course of his employment, and therefore arose out of as well as in the course of employment. It would scarcely be claimed that, if through temporary dizziness or other cause a workman came in contact with a revolving saw or other machinery, and thus sustained injury, compensation would be denied him.

On the subject of nervous shock, it is stated in 1 *Ronnold on Workmen's Compensation*, 293, § 95, that "personal injury by accident includes a nervous shock." And on page 294, the following appears:

"The possibility of witnessing some shocking injury to a fellow workman and receiving a nervous shock therefrom is a risk of any employment. Such nervous shock arises out of and is incidental to the employment, and is compensable if it definitely causes the injury. Thus (in *Yates* v. *South Kirby, &c., Collieries, Ltd.*, 2 *K. B.* (1910) 538), where an employe is present at the scene of the death by accident of several of his fellow employes while working on the employers' premises, and attempts to aid in the rescue, and becomes insane in consequence of the shock incident to the excitement, peril and sense of duty to aid in the rescue, such disability is caused by accident. There is no distinction between such mental breakdown and a physical breakdown in so far as they affect the right to compensation. It is only essential in such case that the breakdown, whether mental or physical, be proximately caused by accident occurring in the course of employment."

In seeking a compensation award, petitioner relies upon the Yates case which has been cited with approval by our Court of Errors and Appeals in the recent case of *Sigley* v. *Marathon Razor Blade Co., Inc.*, 111 *N. J. L.* 25; 166 *Atl. Rep.* 519, and also the case of *Freedman* v. *Spicer Manufacturing Corp.*, 97 *N. J. L.* 325; 116 *Atl. Rep.* 427, in which the same court affirmed an award of compensation of the workmen's compensation bureau, holding:

"The fracture of skull and death of an employe due to his fainting and falling as a result of an innoculation induced by

his employer during an influenza epidemic, and administered at the company's plant, was held to have arisen out of and in the course of his employment."

The question of mental shock unaccompanied by physical impact would seem at first impression to be a novel one under this jurisdiction, but upon making an exhaustive examination of many of the earlier decisions of the Common Pleas Courts which were formerly empowered with original jurisdiction of cases arising under the Workmen's Compensation act, I find that Judge Sullivan, in the case of *Wilson* v. *Lake Hopatcong Ice Co.* (*Hudson County Common Pleas,* 1915), 38 *N. J. L. J.* 172, recognized and applied the ruling laid down by the English court in the Yates case. In that case it appeared that petitioner's decedent was employed by respondent as a foreman and watchman at its ice works along Lake Hopatcong, his duties being to see that the night watchmen attended to their duties at three plants comprising the ice works at the lake. On the night of May 10th, 1913, some shots were fired at or near one of the ice houses, and one of the watchmen there was in such a nervous state that he was either sent home or quit his job. Petitioner claimed that her husband also received such a nervous shock by reason of the shot firing that it prostrated him and caused his death on May 21st, 1913. At this point, Judge Sullivan states:

"I am quite clear that if this be the fact, petitioner is entitled to compensation under the act. *Yates* v. *South Kirby, &c., Collieries,* 3 *B. W. C. C.* 418.

"Both Dr. King and Dr. Hasking, however, give it as their opinion that the shock which the decedent received on the 10th or 11th of May, if he did receive such shock, did not cause his death, because such a long interval of time elapsed after the shock up to the time of death, and they did not believe that that could have been the exciting cause, and while both testified that it was possible for such a shock to cause death at a period of ten days afterwards, it was not in their opinion probable."

Although the case was decided adversely to the petitioner on the ground that she failed to sustain the burden of proof,

.the principle of mental shock or mental injury without trauma was well recognized as a compensable injury under the purview and meaning of the Workmen's Compensation act.

Now coming to the case at bar, and upon carefully considering and analyzing the entire testimony, I conclude that there is in this case an unbroken chain of events revealing a reasonably accurate history of cause and effect between the employment and the resulting accident, to wit: (a) the shocking sight to which petitioner·was exposed; (b) fright and fainting spell which overtook him as a consequence thereof; (c) fall and the striking of his head against the concrete floor, causing physical injuries; and that these events taken separately and in their sequence are causative factors in producing ·the accident which arose out of and in the course of petitioner's employment:

\*  \*  \*  \*  —  \*  \*  \*

JOHN J. STAHL,
*Deputy Commissioner.*